**FILED**

**MAY 4, 2011**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MHN

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

RECEIVED
NOV 2 9 2010
11-29-2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| LESTER DOBBEY, | ) REQUESTING JURY TRIAL |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) |
| MICHAEL RANDLE, | ) |
| ROGER E. WALKER JR., | ) |
| (Dep. Dir.) PIERCE, | ) |
| JACKIE MILLER, | ) |
| TERRY L. McCANN, | ) |
| FRANK SHAW, | ) |
| ANTHONY RAMOS, | ) Civil No. 10 C 3965 |
| MARCUS HARDY, | ) |
| MARVIN REED, | ) |
| MARK HOSEY, | ) |
| J. THOMAS, | ) |
| (I.A.) KISSELL, | ) |
| LESLIE TURNER, | ) |
| MARGARET THOMPSON, | ) |
| SHAUN BASS, | ) |
| LIPING ZHANG, | ) |
| LaTONYA WILLIAMS, | ) Honorable Judge Presiding, |
| Defendants. | ) Robert Dow Jr. |

SECOND AMENDED COMPLAINT

PURSUANT TO 42 U.S.C. § 1983

Plaintiff LESTER DOBBEY, pro se, in the above titled caption,
complains against Defendants MICHAEL RANDLE, ROGER E. WALKER JR.,
(Dep. Dir.) PIERCE, JACKIE MILLER, TERRY L. McCANN, FRANK SHAW,
ANTHONY RAMOS, MARCUS HARDY, MARVIN REED, MARK HOSEY, J. THOMAS,
(I.A.) KISSELL, LESLIE TURNER, MARGARET THOMPSON, SHAUN BASS,
LIPING ZHANG and LaTONYA WILLIAMS, and state as follows:

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to the First, Eigth and Fourteenth Amendments of the United States Constitution, seeking monetary, declaratory and injunctive relief under 42 U.S.C.§ 1983.

To redress deprivations of the Plaintiff's Civil Rights which were precipitated by the unlawful Delberate Indiffernce to a Serious Medical Condition and Retaliatory acts and omissions of the Defend-ants, purporting to act under the color of law.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1331 and 1343(a)(3). The declaratory and injunctive relief sought is authorized by 28 U.S.C§§ 2201, 2202 and 2284.

3. Venue is proper pursuant to 28 U.S.C.§ 1391(b)(2), in the United States District Court for the Northern District of Illinois because the facts giving rise to the claims in this Complaint occured in this district.

## PARTIES

4. Plaintiff, Lester Dobbey, is an inmate in the custody of the Illinois Department of Corrections ("IDOC"). Plaintiff is housed at Stateville Correctional Center, Register No. R16237, P.O. Box 112, Joliet, Illinois 60434, Will County.

5. Defendant, Michael Randle, is the Director of the Illinois Department of corrections while Plaintiff was in custody there.

6. Defendant Roger E. Walker Jr.,is the Former Director of the Illinois Department of Corrections while Plaintiff was in custody there.

7. Defendant Pierce,is the Deputy Director of the Illinois Department of Corrections while Plaintiff was in custody there.

8. Defendant Jackie Miller,is the Administrative Review Board Chairperson for Inmate Issues of the Illinois Department of Corrections while Plaintiff was in custody there.

9. Defendant Terry L. McCann,is the Former Chief Administrative Officer and Warden of Stateville Correctional Center while the Plaintiff was confined there.

10. Defendant Frank Shaw,is the Former Chief Administrative Officer and Warden of Stateville Correctional Center while Plaintiff was confined there.

11. Defendant Anthony Ramos,is the Former Chief Administrative Officer and Warden of Stateville Correctional Center while Plaintiff was confined there.

12. Defendant Marcus Hardy,is the Chief Administrative Officer and Warden of Stateville Correctional Center while Plaintiff was in confined there.

13. Defendant Marvin Reed,is the Former Assistant Warden of Stateville Correctional Center while Plaintiff was confined there.

14. Defendant Mark Hosey,is the Assistant Warden of Stateville Correctional Center while Plaintiff was confined there.

15. Defendant J. Thomas, is the Officer/Major of Stateville Correctional Center while Plaintiff was confined there.

16. Defendant Kissell, is the Intelligence Officer/Agent of Stateville Correctional Center while Plaintiff was confined there.

17. Defendant Leslie Turner, is the Intelligence Officer/Agent of Stateville Correctional Center while Plaintiff was confined there.

18. Defendant Margaret Thompson, is the Grievance Officer of Inmate Issues at Stateville Correctional Center while Plaintiff was confined there.

19. Defendant Shaun Bass, is the Grievance Officer of Inmate Issues at Stateville Correctional Center while Plaintiff was confined there.

20. Defendant Liping Zhang, is the Former Medical Doctor of Stateville Correctional Center while Plaintiff was confined there.

21. Defendant LaTonya Williams, is the Medical Physician Assistant of Stateville Correctional Center while Plaintiff was confined there.

## GENERAL ALLEGATIONS

22. The Illinois Department of Corrections is the Operative Bureau for Programs, Institutions and Facilities within "IDOC" and is located at 1301 Concordia Court, P.O. Box 19277, Springfield, Illinois 62794-9277.

23. As Director of "IDOC", Defendant Randle was legally responsible for various divisions, and the responsibilities and duties

placed in the Department by the laws of the State of Illinois. In-
cluding, but not limited to, Investigating and Resolving Inmate Issues
and Complaints in the Department.

24. As Former Director of "IDOC", Defendant Walker was legally
responsible for various divisions, and the responsibilities and duties
placed in the Department by the laws of the State of Illinois. In-
cluding, but not limited to, Investigating and Resolving Inmate Issues
and Complaints in the Department.

25. As Deputy Director of "IDOC", Defendant Pierce was legally
responsible for various divisions and facilities, including, but not
limited to, Resolving Inmate Issues and Complaints in the Department.

26. As the Administrative Review Board Chairperson of "IDOC",
Defendant Miller was legally responsible for Investigating and Re-
solving Inmates Issues and Complaints in the Department.

27. Stateville Correctional Center is one of the facilities
within the Illinois Department of Corrections and is located at,
Route 53, P.O. Box 112, Joliet Illinois 60434. Stateville Correctional
Center is  a Maximum-Security Institution.

28. As Former Chief Administrative Officer and Warden of the
Stateville Correctional Center, Defendant McCann was legally respon-
sible for the operations of Stateville, which included, but not limit-
ed to, the Welfare of Inmates, as well as following the Mission of
Stateville Correctional Center, including, Ensuring that Inmates are
confined in a "Safe, Secure and Hummane Manner" and to "Preserve and

Premote Individual Rights and Responsibilities." As Former Chief Administrative Officers and Wardens, Defendants Shaw and Ramos also shared this same legal responsibility as Defendant McCann did when they all were Wardens.

29. As the Chief Administrative Officer and Warden of the Stateville Correctional Center, Defendant Hardy was legally responsible for the operations of Stateville, which included, but not limited to, the Welfare of Inmates, as well as following the Mission of Stateville Correctional Center, including, Ensuring that Inmates are confined in a "Safe, Secure and Hummane Manner" and to "Preserve and Premote Individual Rights and Responsibilities."

30. As the Former Assistant Warden of Stateville Correctional Center, Defendant Reed was legally responsible for security-operations, among other things, which included, but not limited to following the Mission of Stateville Correctional Center, including, Ensuring that Inmates are confined in a "Safe, Secure and Hummane Manner" and to "Preserve and Premote Individual Rights and Responsibilities."

31. As the Assistant Warden of Stateville Correctional Center, Defendant Hosey was legally responsible for operating programs, among other things, which included, but not limited to following the Mission of Stateville Correctional Center, including, Ensuring that Inmates are confined in a "Safe, Secure and Hummane Manner" and to "Preserve and Premote Individual Rights and Responsibilities."

32. As the Officer and Major of Stateville Correctional Cen-

ter,Defendant Thomas was legally responsible for Supervising the
Officers under his command and following the Orders of his Super-
visors,which included,but not limited to,Ensuring that Inmates
are confined in a "Safe,Secure and Hummane Manner" and to "Pre-
serve and Premote Individual Rights and Responsibilities."

33. As the Intelligence Officer and Agent of Stateville Cor-
rectional Center,Defendant Kissell was legally responsible for,
among other things,the Safe,Secure and Hummane Confinement of the
Inmates. Defendant Kissell was legally responsible for,but not limi-
ted to,the "Preserving and Promotion of Individual Rights" and to
"Investigate all acts of omissions and unlawfulness by "IDOC" Staff
and Inmates in the facility" and to "Document,Record and Report all
acts that were made knowledgable." Defendant Turner shared these
same legal responsibilities as Defendant Kissell.

34. As the Grievance Officers of Stateville Correctional Cen-
ter,Defendants Thompson and Bass were legally responsible for,among
other things,the Review,Processing of,Investigation and Resolution
of grievances filed by Inmates at Stateville Correctional Center.

35. As the Medical Doctor of Stateville Correctional Center,
Defendant Zhang was legally responsible for,including but not limi-
ted to,Conducting Inmate Sick-Call,Examining,Diagnosising and Treat-
ing Inmates referred to the Ohysician,Reviewing all Laboratory and
X-Ray,and Ancillary Reports,Documenting the Review of Inmates Charts
,Rendering initial Emergency Treatment Medically to who are injured

on the premises, Ensuring Follow-Up Care, as well as Formulating written Individual Treatment Plans for Inmates with Medical Problems, as well as making Recommendations to the Medical Director for Non-Emergency Referrals to Medical Specialist or Outside Hospitals as needed for Diagnosis or Treatment of those Inmates with Health Care Problems that may extend beyond the scope of services provided on the premise.

36. As the Physician Assistant of Stateville Correctional Center, Defendant Williams was legally responsible for, including, but not limited to, Examining for, and or Recognizing and Interpreting Symtoms of patient conditions, Participate in and Assist in Remedial Measures and Technical Decisions based upon Sound Medical Practice and knowledge, Order Medications for Inmates as required and with approval of Physician or Denist, Maintain Clinical Charts and Records, Ensure Follow-Up Care and Treatment, and Enforce written Policies and Procedures of the Health Care Unit and Center, as well as perform other duties as assigned or required.

## PLAINTIFF'S FIRST CAUSE OF ACTION
## DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION

37. On September 18, 2008, Plaintiff filed an Internal Emergency Grievance to Defendant McCann, based on Stateville Correctional Center's Health Care Unit, complaining of the H.C.U. "Failure to Attend to his Medical Needs, and requesting Medical Care". (see, Exhibit-1).

38. Within Plaintiff's Emergency Grievance dated 9-18-08, he explained to Defendant McCann that he was "Writing the grievance

on Stateville C.C.'s Health Care Unit and their delay and unrespon-
sive methods in the care of inmates medical concerns and needs,per
se,Plaintiff. (see,Exhibit-1).

   39. Plaintiff explained to Defendant McCan that "It had been
approximately over 2 months that he had been writing Request Slips
to the Health Care Unit to be examined for a condition Plaintiff
was having which could have been "Ulcerative Colitis,Chron's Disea-
se,Inflammatory Bowel Disease or Hemorrhoids". (see,Exhibit-1).

   40. Plaintiff continued to explain to Defendant McCann that
he had began to write the Request Slips in middle July of 2008,and
stated that he had never been seen. And that as July had past and
some of August begun to past without medical attention Plaintiff
then began to record each time he submitted Request Sips either by
Institutional Mail or the Medical Box in,his living quarter,Bravo
Cell-House or to Health Care Personnel when he was called over to
the Health Care for other purposes. (see,Exhibit-1).

   41. Dates that Plaintiff of submitting Request Slips were:
8-17-08; 8-21-08; 8-24-08; 8-25-08; 8-28-08; 8-31-08; 9-4-08; 9-5-08;
9-9-08; 9-10-08; 9-14-08; 9-16-08; and 9-18-08 the same day as he
wrote the Emergency Grievance to Defendant McCann. (see,Exhibit-1).

   42. Plaintiff continued on to explain to Defendant McCann that
"In the Request Slips he had explained that he had been having some
Abdominal Pain, Constipation, Strain, Swelling and Loss of Blood
during times that he defecated,and that he had not been seen by any

Medical Personnel. And that by him continuously going through the problems, his Nerves were being triggered. (see, Exhibit-1).

43. Ultimately, Plaintiff told Defendant McCann that he would like to have been fully examined by a Doctor to find out his problem, and would like to have been treated for his problems accordingly. And further requested that the Health Care Unit-Director or the Administrator design some type of effective system, in which, Inmates, per se, Plaintiff, would not have to submit Request Slips for 2 or more months and still wouldn't be able to be seen until that person would write a grievance. (see, Exhibit-1).

44. On September 29, 2008, Defendant McCann denied Plaintiff's request for Medical Attention, and told Plaintiff to re-submit his grievance in the normal manner. (see, Exhibit-1).

45. On this same day, September 29, 2008, Defendant Thompson also denied Plaintiff's request for Medical Attention, and told Plaintiff to re-submit his grievance in the normal manner. (see, Exhibit-2).

46. On October 9, 2008, Defendant Miller denied Plaintiff's request for Medical Attention also, by telling Plaintiff submit his Emergency Grievance to a Counselor for a response, which would have been a resubmission unnecessary. (see, Exhibit-3).

47. On September 30, 2008, while Plaintiff was at the Health Care Unit for other purposes, Plaintiff saw Defendant McCann where Plaintiff stopped Defendant McCann and made inquiry as to "Why did Defendant McCann deny his Emergency Grievance and Medical Request." (see, Exhibit-4).

47. Defendant McCann then asked Plaintiff as to the Nature of the Emergency Grievance, Plaintiff told him Abdominal Pain and that he seen Blood in his Stool. Defendant McCann then told the Health Care Unit Door Officer c/o Banks to make sure that Plaintiff did not leave until he had been seen by a Doctor. c/o Banks complied. (see, Exhibit-4).

48. After Plaintiff completed his other appointment, Plaintiff was sent to the Emergency Room, Where Defendant Williams then examined Plaintiff for Blood in his Stool, by way of a PSA Test, Abdominal Pains as well as other medical problems. (see, Exhibit-4).

49. Defendant Williams found no signs of Blood, nor any other abnormal defects, but ordered that Plaintiff go under Diagnostic Procedure to have his Blood and Urine retained for Laboratory Processing. (see, Exhibit-4).

50. On October 7, 2008, Plaintiff returned to the Health Care Unit, where Plaintiff again complained to Defendant Zhang of his abdominal problems, as well as, other medical problems. (see, Exhibit-4).

51. Ultimately, Defendant Zhang prescribed Plaintiff Muscle Relaxers and told Plaintiff to rub his Stomach 100 times a day, and took no further steps to examine Plaintiff' Abdominal problems. (see, Exhibit-4).

52. On October 12, 2008, Plaintiff submitted another Internal Grievance to his Counselor complaining of the Ongoing Abdominal

problems and events that had transpired, and requested for some form
of effective medical attention. Plaintiff's Counselor immediately
after receiving his Grievance forwarded it to Defendant Hosey on the
14th day of October 2008. Defendant Hosey thereafter failed to take
any steps into seeking effective medical attention for Plaintiff.
(see, Exhibit-4).

53. On November 27, 2008, Plaintiff stopped Defendant McCann
again and admonished him that Plaintiff's Ongoing medical problems
of Blood in his Stool and Abdominal Pains, and explained that the
Health Care Unit was failing to diagnose his condition to treat
them properly. Plaintiff further explained to Defendant McCann that
he had filed Grievances to no avail, and that some Grievances were
still being under review over two months. Defendant McCann then told
Plaintiff, "The Grievance will take care of itself, just go to chow,
it's ThanksGiving!" Defendant McCann then walked off without seeking
any medical attention for Plaintiff. (see, Exhibits-5, 6, 7, 8, 9, 10 and
11).

54. On January 13, 2009, Plaintiff stopped Defendant Kissel as
he walked into Plaintiff's living unit Bravo Cell-House 4 Gallery,
and told Defendant Kissell of his medical problems of how he was
seeing Blood in his Stool, and explained how he had been seen pre-
viously, but the problems were still ongoing. (see, Exhibit-13).

55. Plaintiff further explained to Defendant Kissell that he
had filed a Grievance in October of 2008 regarding the matter, but

had not received any effective treatment or responses. Defendant Kissell then requested Plaintiff's Name, I.D. Number, Cell Location, and told Plaintiff that he would go to the Health Care Unit to look into the matter. Plaintiff never heard anything from Defendant Kissell, where he did not take any steps to seek medical attention for Plaintiff. (see, Exhibit-13).

56. On January 19th or 20th, 2009, at approximately 3:41 pm, Plaintiff was watching the Presidents Inauguration, when Plaintiff stopped Defendants Pierce and Defendant Thomas as they both walked 4 Gallery in Plaintiff's living quarter Bravo Cell-House, and then explained to them his medical problems of Blood in his Stool and the exams that had been performed, but that the problem was still Ongoing. (see, Exhibit-13).

57. Plaintiff further explained to both Defendants Pierce and Defendant Thomas that he had filed Grievances which were pending since October of 2008, but still had not receive any effective care or responses. Defendant Pierce ordered Defendant Thomas to write down Plaintiff's Name, I.D. Number and Cell-Location. Defendant Thomas complied. Defendant Thomas then told Plaintiff that he would talk to Defendant Hosey. Plaintiff never heard anything from Defendant Pierce, Defendant Thomas or Defendant Hosey, where no steps were taken to aid Plaintiff with medical attention. see, Exhibit-13).

58. On January 28, 2009 at approximately 11:30 am, Plaintiff

was in a Holding Cage in his living quarter Bravo Cell-House, when Plaintiff stopped Defendant Kissell again as he walked past, and asked Defendant Kissell whether or not did he take any measures to investigate and seek medical attention, because Plaintiff still had not received any responses. Defendant Kissell again asked Plaintiff for his Name, I.D. Number and Cell-Location. Defendant Kissell then assured Plaintiff that he would check on the medical problems once he went to the Health Care Unit. Plaintiff never heard anything from Defendant Kissell, where he failed to seek any medical attention/Care for Plaintiff. (see, Exhibit-13).

59. On February 5, 2009, Plaintiff stopped Defendant Reed, while Plaintiff was at work in the Law Library, and explained to Defendant Reed of his medical problems of seeing Blood in his Stool, in which Defendant Reed immediately replied, "Shit...that shit be happening to me too!" Plaintiff then asked Defendant Reed did he take it serious. Defendant Reed replied, Yeah. Plaintiff went on to explain his examinations that he had received, and explained that the problems were still ongoing. Plaintiff explained that he wished for effective treatment for a diagnosis in regards to his Abdominal problems. (see, Exhibit-13).

60. Defendant Reed asked for Plaintiff's Name, I.D. Number and Cell-Location, and told Plaintiff that he would look into the matter once he go to the Health Care Unit. Plaintiff never heard anything from Defendant Reed regarding the matter, where he failed to seek

any medical attention/care for Plaintiff. (see,Exhibit-13).

61. On March 21,2009,while on a Recreational Yard,Plaintiff encountered a medical injury,whereas Plaintiff was transported to the Health Care Unit,via Wheelchair,for a Medical Doctor's Evaluation. Plaintiff was evaluated by Defendant Zhang. (see,Exhibit-13).

62. After being evaluated by Defendant Zhang for Plaintiff's Yard injury,Plaintiff further complained to Defendant Zhang about his Abdominal problems of Pain and still seeing Blood in his Stool, and explained to Defendant Zhang that he had been previously seen to no avail,and that the problems were still ongoing,and that the medications that he had been prescribed were not effective. (see, Exhibit-13).

63. Defendant Zhang then insulted Plaintiff,and asked Plaintiff was he engaging in Anal Sex. Plaintiff replied,"Definitely Not! No!" Defendant Zhang regardless of Plaintiff's answer to her insult, insisted that she could check Plaintiff for any engagement for Anal Sex. Plaintiff refused,and further stated to Defendant Zhang,"You don't even want to check me for my problems,but you want to check me for that. Plaintiff's Medical File was unavailable,and Defendant told Plaintiff that she would do a Follow-Up. Defendant Zhang took no steps into searching out Plaintiff's Abdominal problems. (see, Exhibit-13).

64. On March 23,2009,Defendant Shaw and Defendant Thompson denied Plaintiff's request for effective Medical Care,by denying

Plaintiff's October 12,2008 Grievance,where Plaintiff in his Griev-
ance explained to both Defendants his medical problems of his Ab-
dominal problems. (see,Exhibits-4 and 12).

65. On April 1,2009,Plaintiff went to the Health Care Unit for
his Annual Physical. Plaintiff made complaint again of his Abdominal
problems of Blood in his Stool and Pain,as well as,other medical
problems to **Defendant** Zhang. Defendant Zhang took no steps to examine
or treat Plaintiff's Abdominal problems. (see,Exhibit-13).

66. On this night of April 1,2009,Plaintiff filed another In-
ternal Grievance to his Counselor,regarding his Ongoing Abdominal
problems of seeing Blood in his Stool and Pains,and requested for
some effective care. The Counselor forwarded this Grievance to Def-
endant Hosey for resolution of Plaintiff's complaint and request.
Defendant Hosey took no steps into seeking effective treatment for
Plaintiff. (see,Exhibits-13,19,20,21 and 28).

67. On April 17,2009,Defendant Walker and Defendant Miller
denied Plaintiff's request for effective Medical Care,by denying
Plaintiff's October 12,2008 Grievance,where Plaintiff in his Griev-
ance explained to both Defendants his medical problems of his Ab-
dominal problems. (see,Exhibit-14).

68. On June 10,2009,Plaintiff was seen by Defendant Williams
again,where Plaintiff made complaint of other medical problems,as
well as,making complaint of seeing Blood in his Stool and Pains.
(see,Exhibit-15).

69. Defendant Williams then scheduled Plaintiff to go under Diagnostic Procedure to have a Stool Specimen retained for Laboratory Processing. (see,Exhibit-15).

70. On July 27,2009,Plaintiff submitted the Stool Specimen for Laboratory Processing. (see,Exhibit-16).

71. On August 14,2009,Plaintiff went to an appointment at the Health Care Unit for Mental Health Psychologist Dr.Woods,where then Plaintiff complained to Dr.Woods of his medical problems of **Abdominal** Pains,as well as,other medical problems. Dr.Woods then walked the Plaintiff over to the Health Care Unit's Emergency Room. Plaintiff was not given any medical attention immediately,but was scheduled for Sick Call for Abdominal problems. (see,Exhibits-16 and 17).

72. On August 18,2009,Plaintiff was seen by Defendant Zhang for his Abdominal problems,as well as,other medical problems,where Defendant Zhang subsequently prescribed Plaintiff ineffective medications for his Abdominal problems. (see,Exhibit-17).

73. On October 8,2009,Plaintiff submitted an Emergency Grievance to Defendant Ramos,complaining of his Abdominal problems,as well as,other medical problems,and requested for some effective medical treatment. (see,Exhibit-17).

74. On October 26,2009,Defendant Ramos denied Plaintiff's request for effective Medical Care,by denying Plaintiff's October 8,2009 Emergency Grievance,stating that Plaintiff had been seen 10-16-09 and 10-21-09,Defendant Ramos took no **active** steps to

seek out some effective treatment for Plaintiff. (see,Exhibit-17).

75. On January 4,2010,Plaintiff submitted a Grievance to the IDOC Administrative Review Board and complained of Stateville C.C. Defendant Hosey failing to respond to his April 1,2009 Grievance, as well as,the Grievance Officers. (see,Exhibit-18).

76. On January 7,2010,Defendant Miller denied Plaintiff's January 4,2010 Grievance,and told Plaintiff,"If Stateville won't answer your grievance,tell I.A. or the Warden." (see,Exhibit-19).

77. On February 8,2010,Plaintiff wrote Defendant Hardy a letter,and explained what Defendant Miller had instructed him to do,and attached a copy of the response from Defendant Miller,and further requested Plaintiff's Grievances. Plaintiff never heard anything back from Defendant Hardy. (see,Exhibit-20).

78. On February 24,2010,Defendants Hardy and Defendant Thompson denied Plaintiff's request for effective Medical Care,by denying the Plaintiff's October 8,2009 Grievance,where Plaintiff in his Grievance explained to both Defendants his medical problems of his Abdominal problems. (see,Exhibit-21).

79. On April 26,2010,Defendants Randle and Defendant Miller denied Plaintiff's request for effective Medical,by denying the Plaintiff's October 8,2009 Grievance,where Plaintiff in his Grievance explained to both Defendants his medical problems of his Abdominal problems. (see,Exhibit-22).

80. On May 24,2010,Plaintiff submitted another Internal Griev-

ance regarding the Grievance Officer failing to respond to grievances.
Plaintiff's Counselor responded that the Grievance Officers refuse to
respond because grievances were duplicates. (see,Exhibit-23).

81. Plaintiff then forwarded his May 24,2010 Grievance to the
Grievance Officers,whereas this grievance still has not been respond-
ed to either.

82. On June 16,2010,Plaintiff was seen by Defendant Williams
for his Abdominal Pains,as well as,other medical problems. Plaintiff
made inquiry as to the results of his July 27,2009 Stool Specimen
Laboratory Results because no one had ever told Plaintiff of the
results. (see,Exhibits-24 and 25).

83. Defendant Williams told Plaintiff that everything was okay
as to the results,although the Report read "STOOL MUCUS PRESENT" and
was placed in the "OUT OF RANGE" category. Yet,Defendant Williams
noted that Plaintiff assestment was an bacterial infection in the
intestine called "GERD" (Gstroesophagel Reflux Disease). (see,Ex-
hibits-24,25 and 26).

84. Defendant Williams reviewed Plaintiff's Stool Specimen
Laboratory Results on July 28,2009,and failed to take any steps
into notifying Plaintiff or properly taking steps to treat Plaintiff's
"GERD" for approximately 11 months. (see,Exhibits-25 and 26).

85. On this same day,June 16,2010,Defendant Williams scheduled
Plaintiff to go under Diagnostic Procedure to have another Stool Speci-
men retained for Laboratory Processing to detect H.Pylori.(see,Exhi-
bit-25).

86. On June 28, 2010, Plaintiff submitted a Stool Specimen for Laboratory Processing to detect H. Pylori. (see, Exhibit-27).

87. On July 16, 2010, Plaintiff submitted another Internal Grievance regarding the Health Care Unit's failure to do Follow-Up Care and or Treatment, to the Stateville Counselors Office. (see, Exhibit-24).

88. On July 31, 2010, Plaintiff stopped Medical Personnel within Plaintiff's living quarter Bravo Cell-House, who was walking on 4 Gallery and complained of his Abdominal problems. This personnel told Plaintiff that there was not a Doctor present on the weekend because they were short. Yet, this Medical Personnel refered Plaintiff for a Sick Call. (see, Exhibit-28).

89. On August 6, 2010, Plaintiff was seen by Defendant Williams where she told Plaintiff that his H. Pylori Test Results were Negative, and ultimately scheduled Plaintiff to see the Medical Director for evaluation for possible further studies. (see, Exhibit-28).

90. On August 25, 2010, Plaintiff submitted an Emergency Grievance to Defendany Hardy, complaining of the Health Care Unit's failure to do Follow-Up Care, and requested for effective care and treatment. (see, Exhibit-29).

91. Plaintiff further complained of his July 16, 2010 Grievance that he had not received any responses on. (see, Exhibit-29).

92. On September 3, 2010, Defendant Hardy denied Plaintiff's August 25, 2010 Emergency Grievance and explained that Plaintiff was scheduled for September 8, 2010 to see the Medical Director. (see, Exhibit-29).

93. On September 8,2010,Plaintiff was seen by Medical Director Dr.Ghosh,where Plaintiff complained of his Abdominal problems and explained how he had experienced the problems for approximately 2 years. Dr.Ghosh then examined Plaintiff,and ultimately doubled the dosage of medication that Plaintiff had been taking for the two previous months which would treat Ulcers,and told Plaintiff that if he still encountered the problems after two months he would stick a Camera down Plaintiff's throat. (see,Exhibits-30 and 31).

94. On September 9,2010,Plaintiff submitted an Appeal Grievance to the Administrative Review Board,complaining of his evaluation that was made by Dr.Ghosh,and requested for further effective care,and attached this grievance with Plaintiff's August 25,2010 Emergency Grievance. (see,Exhibits-29 and 31).

95. On September 14,2010,Defendant Miller denied Plaintiff's medical request for some effective treatment,by denying Plaintiff's August 25th and September 9,2010 Grievances. But yet,Defendant Miller made comments on Plaintiff's complaints of unresponed grievances. (see,Exhibit-32).

96. On October 14,2010,Plaintiff was sent to the Health Care Unit unscheduled for Emergency in regards to his Abdomen,where the Plaintiff was in severe Pains. As Plaintiff was being evaluated for his vital signs,Plaintiff was told that he had an Family who came to visit him. The Medical Staff member told Plaintiff that she would reschedule him and put him on Sick Call. (see,Exhibit-33).

97. On October 20,2010,Plaintiff was seen by Defendant Williams for his Ongoing Abdominal Pains. Defendant Williams then scheduled Plaintiff to go under Diagnostic Procedure for Laboratory Processing, and to take an X-Ray on the Abdomen,and made an referral for the Plaintiff to the Medical Director. (see,Exhibit-34).

98. On October 22,2010,Plaintiff had the X-Ray administered for his Abdomen. (see,Exhibit-35).

99. On October 25,2010,Plaintiff went under Diagnostic Procedure to have Blood retained for Laboratory Processing. (see,Exhibit-36).

100. Plaintiff avers that as of November 10,2010,Plaintiff has not been notified of either the X-Ray or Blood Test Results.

101. Plaintiff realleges paragraphs 1 through 103,and states that Defendants mentioned therein acted with actual Knowledge of Plaintiff's Serious Medical Condition and Problems and acted with Deliberate Indifference.

102. Plaintiff states that the Defendants continuously Delayed or denied proper Medical Care to his Serious Needs,where Defendants either could have procured medical care when Plaintiff could not do so for himself.

103. Plaintiff avers that as Experienced Supervisory Officers and Physicians,Defendants should have reasonably known of the U.S. Constitutional Standards Governing their Conduct,and that their actions Violated these clearly established Constitutional Norms.

<u>VIOLATIONS OF PLAINTIFF'S EIGTH AMENDMENT RIGHTS</u>
<u>DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION</u>

104. Plaintiff realleges and incorporates by reference Paragraphs 1 through 106 of this Second Amended Complaint.

105. As outlined above, Plaintiff exhausted his Administrative Remedies for his allegations through the Prison's Internal Grievance Process, except for those processes that became Unavailable.

106. Plaintiff has Rights protected by the Eigth Amendment of the United States Constitution. This Right include the right to be free from Cruel and Unusual Punishment, and the Right to Adequate Medical Care and Treatment.

107. Plaintiff has exercised his Constitutional Protected Right to be free from Cruel and Unusual Punishment with Civil Action in regarding to Defendants actions and conduct in Deliberate Indifference to Plaintiff's Serious Medical Conditions.

108. Defendant Randle, Director of IDOC, acting under the color of State Law, violated Plaintiff's 8th Amendment Protected rights to be free from Cruel and Unusual Punishment, When Defendant Randle acted Deliberate Indifferent to Plaintiff's Serious Medical Conditions.

109. Defendant Walker, Former Director of IDOC, acting under the color of State Law, violated Plaintiff's 8th Amendment Protected right to be free from Cruel and Unusual Punishment, when Defendant Walker acted Deliberate Indifferent to Plaintiff's Serious Medical Condition.

110. Defendant Pierce, Deputy Director of IDOC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant Pierce acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

111. Defendant Miller, ARB Chairperson of IDOC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant Miller acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

112. Defendant McCann, Former Warden of Stateville CC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant McCann acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

113. Defendant Shaw, Former Warden of Stateville CC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant Shaw acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

114. Defendant Ramos, Former Warden of Stateville CC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant Ramos acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

115. Defendant Hardy, Warden of Stateville CC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant Hardy acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

116. Defendant Reed, Former Assistant Warden of Stateville CC, acting under the color of State law, violated Plaintiff's 8th Amenment protected right to be free from Cruel and Unusual Punishment, when Defendant Reed acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

117. Defendant Hosey, Assistant Warden of Stateville CC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant Hosey acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

118. Defendant Thomas, Officer Major of Stateville CC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant Thomas acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

119. Defendant Kissell, Intelligence Agent of Stateville CC, acting under the color of State law, violated Plaintiff's 8th Amendment protected right to be free from Cruel and Unusual Punishment, when Defendant Kissell acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

120. Defendant Thompson, Grievance Officer of Stateville CC, acting under the color of State Law, violated Plaintiff's 8th Amendment Protected right to be free from Cruel and Unusal Punishment, when Defendant Thompson acted Deliberate Indifferent to Plaintiff's Serious Medical Conditions.

121. Defendant Zhang, Medical Doctor of Stateville CC, acting under the color of State Law, violated Plaintiff's 8th Amendment Protected rights to be free from Cruel and Unusual Punishment, when Defendant Zhang acted Deliberate Indifferent to Plaintiff's Serious Medical Conditions.

122. Defendant Williams, a Physician Assistant of Stateville CC, acting under the color of State Law, violated Plaintiff's 8th Amendment Protected right to be free from Cruel and Unusual Punishment, when Defendant Williams acted Deliberately Indifferent to Plaintiff's Serious Medical Conditions.

123. Plaintiff avers that all the abovementioned Defendants acts of Deliberate Indifference to his Serious Medical Conditions has been a great cause of mental and emotional distress for Plaintiff going through two years of Abdominal Problems, whereas the Care and Treatments have been Cursory.

(PLAINTIFF'S SECOND CAUSE OF ACTION IS BELOW)

PLAINTIFF'S SECOND CAUSE OF ACTION
RETALIATORY TREATMENT FOR EXERCISING FREE SPEECH

124. On October 11,2002,Plaintiff was first admitted to "IDOC" after being sentenced to serve a term of 51 years imprisonment,by the Honorable Judge Preston L. Bowie of the Circuit Court of Cook County. (People v. Dobbey,Case No. 00-CR-10872).

125. On October 8,2004,the Appellate Court of Illinois,First Judicial District,in People v. Dobbey,Appeal No. 1-02-3452,Vacated Plaintiff's sentence and remanded the cause. (see,Exhibit-A).

126. On February 10,2005,Cook County Circuit Court Judge Preston L. Bowie,retained jurisdiction of Plaintiff and released that same jurisdiction to the Cook County Sheriff,whereas Plaintiff was then transferred to the Cook County Jail ("CCDOC"). (People v. Dobbey, Case No. 00-CR-10872).

127. On August 25,2005,Plaintiff was sentenced again to the Illinois Department of Corrections to serve another term of 51 years imprisonment by the Honorable Judge Preston L. Bowie of the Circuit Court of Cook County. (People v. Dobbey,Case No. 00-CR-10872).

128. On or about,August 29,2005,Plaintiff was transferred from the Cook County Jail ("CCDOC"),who then gave jurisdiction over to the Illinois Department of Corrections Intake Northern Receiving Center ("NRC") of Stateville Correctional Center.

129. On or about,September 14,2005,Plaintiff was transferred from Stateville CC to Menard CC.

130. On March 21,2007,Plaintiff was transferred from Menard CC back to Stateville CC,due to racially motivated acts by ("IDOC") prison officials,and retaliatory treatment. (see,Dobbey v. Illinois Department of Corrections,et al.,574 F.3d 443).

131. On December 10,2008,Plaintiff filed a civil action in a PETITION OF MANDAMUS to the Circuit Court of Will County for the Order of Adequate Medical Treatment. (see,Dobbey v. Illinois Dept. of Corrections,et al.,Case No. 08-MR-1270)(see also,Exhibit-B).

132. Plaintiff's Petition of Mandamus included allegations against Defendant Reed,where Plaintiff complained to Defendant Reed of his medical problems of seeing Blood in his Stool,whereas the Defendant Reed shared a common medical issue,but failed to procure any medical care for Plaintiff. (see,Dobbey v. Illinois Department of Corrections,et al.,Case No. 08-MR-1270).

133. The conversation between Defendant Reed and Plaintiff had transpired February 5,2009,where Plaintiff had included these same allegations in a Internal Grievance April 1,2009. (see,Dobbey v. Illinois Department of Corrections,Case No. 08-MR-1270)(see also, Exhibit-13 and C).

134. On August 24,2009,Plaintiff filed in the Circuit Court of Will County his Amended Petition of Mandamus,which detailed all of Plaintiff occurrences and encounters. (see,Dobbey v. Illinois Dept. of Corrections,Case No. 08-MR-1270).

135. On September 2,2009,at approximately 10:15 am,while the

Plaintiff was in his cell, IDOC Internal Affair/Intelligence Officers, which included Defendant Turner, came to Plaintiff's cell to conduct a search of Plaintiff and Inmate William Conner-K66018, who both did reside there. (see, Exhibits-D and E).

136. At approximately 12:00 pm, these I.A. Officers, which included Defendant Turner left from Plaintiff's cell with Conner's Television, Blue Jean Coat, Trimmers and Plaintiff's Radio, and ultimately left out of the living quarter without a legitimate explanation. (see, Exhibits-D and E).

137. After making inquiry as to whether or not if Plaintiff could go back to his cell, Plaintiff and Conner were told that they were to be taken to Punitive Segregation Confinement without explaination. (see, Exhibits-D and E).

138. While Plaintiff remained in a holding cage, Defendant Reed and another Officer came into Plaintiff's living quarters within a matter of three to four minutes behind Defendant Turner's exit. (see, Exhibits-D and E).

139. Plaintiff attempted to stop Defendant Reed, whereas Defendant Reed did not stop, but told Plaintiff that he would be back. Then Defendant Reed and the Other Officer proceeded to 4 Gallery where Plaintiff resided at the time. After Defendant Reed left off of the gallery and began to walk pass the holding cage, Plaintiff the stopped Defendant Reed and introduced himself. (see, Exhibits-D and E).

140. Defendant Reed then told Plaintiff, "I know who you are, you're

the Grievance,Lawsuit Man..." Plaintif replied,Yeah. (see,Exhibits-D and E).

141. Plaintiff then asked Defendant Reed did he have a right to know why he was going to Segregation/Confinement. Defendant Reed answered,"Yeah,but you know why this happened to you." Plaintiff responded,"No,I don't know why. I.A. shook down our cell for like two and a half hours,then just left." (see,Exhibits-D and E).

142. Defendant Reed stated that he had just talked to Defendant Turner,as well as other I.A. members,before they had came over. Defendant Reed further stated to Plaintiff,"You know you Fucked-Up... Fucking with me with your Grievance." (see,Exhibits-D and E).

143. Plaintiff then stated to Defendant Reed,"I didn't lie in it." Defendant Reed then stated that he was going to go see what Defendant Turner and the other I.A. members found. (see,Exhibits-D and E).

144. Defendant Reed then whispered to the Officer who he walked into the building with and stated,"Dobbey had the nerve to put me in his grievance and lawsuit." Defendant Reed then left the building. (see,Exhibits-D and E).

145. Ultimately,Plaintiff was taken to Punitive Segregated Confinement on this same day of September 2,2009. (see,Exhibits-D,E and F).

146. On September 9,2009,Plaintiff was served the Retaliatory Disciplinary Report dated (09/02/09) that was written by Defendant

Turner. (see,Exhibits-F).

147. On September 16,2009,the Disciplinary Adjustment Committee commenced a Hearing on the Disciplinary Report that was filed against Plaintiff on (09/02/09). (see,Exhibit-G).

148. Ultimately,Plaintiff was found guilty of the retaliatory charges,sentenced to serve 3 Months Punitive Segregation/Confinement, 3 Months C Grade,3 Months Commissary Restriction and 3 Months loss of Telephone Communication privileges. (see,Exhibit-G).

149. On October 15,2009,Plaintiff filed Three Grievances in the regard to Retaliatory Treatment and the Disciplinary Report that was written against him. (1) Emergency Grievance to the Warden; (1) Grievance to the Counselor; and (1) Grievance to the Grievance Office. (see,Exhibits-E).

150. Within the Grievances that Plaintiff had filed regarding the Retaliatory Treatment,Plaintiff made a meritorious complaint and also explained in great detail how his Disciplinary Report should have been reversed and expunged. (see,Exhibits-E).

151. On November 7,2009,Plaintiff's Counselor responded to the Grievance filed and admonished Plaintiff that he needed to attach a copy of the Disciplinary Report or Summary. (see,Exhibits-E).

152. On December 21,2009,after Plaintiff made a continued complaint of Retaliatory Treatment,Defendant Bass blatently disregarded Plaintiff's complaint and evidence,and denied Plaintiff's October 15,2009 Grievance,and enforced,condoned and approved of the acts

committed against Plaintiff in Retaliation. (see,Exhibit-H).

153. On December 28,2009,after reviewing Plaintiff's complaint
of Retaliatory Treatment,Defendant Hardy blatently disregarded the
evidence Plaintiff submitted,and denied Plaintiff's October 15,2009
Grievance,and enforced,condoned and approved of the acts committed
against Plaintiff in Retaliation. (see,Exhibit-H).

154. On January 7,2010,Plaintiff filed an Appeal Grievance which
also attached the original grievance,to the IDOC Administative Review
Board. (see,Exhibit-I).

155. Plaintiff explained that his Disciplinary Report should not
have been based on Plaintiff's admittance on October 11,2002,but
rather that it should have been based on when Plaintiff was readmit-
ted on August 29,2005 again to the Illinois Department of Correction.
which made the charge of the 402 violation VOID as charged. Plain-
tiff's evidence was never investigated. (see,Exhibit-I).

156. Plaintiff requested for the relief,that he wanted the
9/2/09 Disciplinary Report expunged from his record and that he
wanted his institutional job back as a law clerk. (see,Exhibit-I,
Appeal Grievance).

157. On January 25,2010,Defendants Jackie Miller and Defendant
Michael Randle responded to Plaintiff's Grievances. (see,Exhibit-J,
ARB-Response).

158. Defendants Miller and Defendant Randle responded to Plain-
tiff's Grievances by stating that they had reviewed the Disciplin-
ary Report that was written by Defendant Turner,and had reviewed

the Adjustment Committee recommendation, and reviewed Defendant Bass and Defendant Hardy recommendation. And that based on a total review of all available information and a compliance check of all the due process safegaurds, Defendant Miller and Defendant Randle were reasonably satisfied Plaintiff committed the offense and recommeded that Plaintiff's grievance be denied, and the Punitive Retaliatory Punishment be Enforced and Approved of. (see, Exhibit-J).

159.. Plaintiff thereafter notified IDOC Officials that he wished to invoke his U.S. Constitutional Rights. (see, Exhibit-K).

160.. Plaintiff also submits Affidavits from William Conner and DeMarcus Hillsman to be witnesses. (see, Exhibits-D and L).

## VIOLATIONS OF PLAINTIFF'S FIRST, EIGTH, FOURTEENTH AMENDMENT RIGHTS
## RETALIATORY TREATMENT FOR EXERCISING FREE SPEECH

161.. Plaintiff realleges and incorporates by reference Paragraphs 124 through 229 of this Second Amended Complaint. As outlined above, Plaintiff has exhausted his Administrative Remedies through the Prison's Internal Grievance Process.

162. Plaintiff has Rights protected by the First, Eigth and Fourteenth Amendments to the United States Constitution. These Rights include the right to Free Speech, the right to be Free from Cruel and Unusual Punishment, Due Process and Equal Protection.

163. Plaintiff exercised his Constitutional Protected Rights to Free Speech and to Petition the Government for Redress by filing Grievances and Civil Action regarding Defendant Reed's conduct in

failing to have Plaintiff's medical problems properly addressed as evidenced by Plaintiff's earlier filed Grievances and Civil Action.

164. Defendant Reed, Assistant Warden, acting under the color of State law, violated Plaintiff's 1st Amendment protected right to free speech and to petition the government for redress of grievances, regarding the Grievances and Civil Action earlier filed, when Defendant Reed initiated other prison officials, per se, Defendant Turner to retaliate and discipline Plaintiff maliciously.

165. Defendant Turner, Internal Affair Intelligence Officer/Agent, acting under the color of State law, violated Plaintiff's 1st and 8th Amendment protected rights to free speech and to petition the government for redress of grievances, and rights to be free from cruel and unusual punishment, when Defendant Turner Turner with all malicious intent retaliated against Plaintiff for Defendant Reed by the discipline and false charges of 402 Health, Smoking, or Safety Violations, where such results of the false charge enforced the punishment of 3 months in the Disciplinary Segregated Unit, 3 months Commissary Denial, and 3 months C-Grade.

166. Defendant Bass, Grievance Officer, acting under the color of State law, violated Plaintiff's 1st and 14th Amendment protected rights to free speech and to petition the government for redress of grievances, and due process, by failing to adequately investigate Plaintiff's October 15, 2009 Grievance regarding the retaliation for his earlier filed Grievances and Civil Action against Defendant Reed, and by fail-

ing to adequately investigate the false 402 Health, Smoking, or Safety
Violations charge by Defendant Turner, which resulted in the punish-
ment of 3 months in the Disciplinary Segregated Unit, 3 months Commi-
ssary Denial, and 3 months C-Grade, which was instituted soley because
Plaintiff exercised his 1st Amendment rights earlier against the
Defendant Reed.

Defendant Bass, thereby, retaliated against Plaintiff by permitting
and enforcing this retaliatory punishment against Plaintiff, which was
instituted soley when Plaintiff exercised his 1st Amendment right in
earlier filed Grievances and Civil Action against Defendant Reed.

167. Defendant Hardy, Chief Administrative Officer and Warden, act-
ing under the color of State law, violated Plaintiff's 1st and 14th
Admendment protected rights to free speech and to petition the govern-
ment for redress of grievances, and due process, by failing to adequate-
ly investigate Plaintiff's October 15, 2009 Grievance regarding the re-
taliation for his earlier filed Grievances and Civil Action against
Defendant Reed, and by failing to adequately investigate the false 402
Health, Smoking, or Safety Violations charge by Defendant Turner, which
resulted in the punishment of 3 months in the Disciplinary Segregated
Unit, 3 months Commissary Denial, and 3 months C-Grade, which was insti-
tuted solely because Plaintiff exercised his 1st Amendment rights
earlier against Defendant Reed.

Defendant Hardy, thereby also, retaliated against Plaintiff by his
permitting and enforcing this retaliatory punishment against Plaintiff,

which was instituted soley when Plaintiff exercised his 1st Amend-
ment rights in earlier filed Grievances and Civil Action against
Defendant Reed.

168.  Defendant Miller,Administrative Review Board-Chairperson,
acting under the color of State law,violated Plaintiff's 1st and
14th Amendment protected rights to free speech and to petition the
government for redress of grievances,and due process,by failing to
adequately investigate Plaintiff's October 15,2009 and January 7,
2010 Grievances regarding the retaliation for his earlier filed
Grievances and Civil Action against Reed,and by failing to adequate-
ly investigate the false 402 Health,Smoking,or Safety Violations
charge by Defendant Turner,which resulted in the punishment of 3
months in the Disciplinary Segregated Unit,3 months Commissary De-
nial,and 3 months C-Grade,which was instituted soley because the
Plaintiff exercised his 1st Admendment rights earlier against the
Defendant Reed.

Defendant Miller,thereby,retaliated against Plaintiff by the
permitting and enforcing this retaliatory punishment against Plain-
tiff,which was instituted solely when Plaintiff exercised his 1st
Amendment rights in earlier filed Grievances and Civil Action against
Defendant Reed.

169.  Defendant Randle,Director of "IDOC",acting under the color
of State law,violated Plaintiff's 1st and 14th Admendment protected
rights to free speech and to petition the government for redress of

grievances, and due process, by failing to adequately investigate Plaintiff's October 15, 2009 and January 7, 2010 Grievances regarding the Retaliation for his earlier filed Grievances and Civil Action against Defendant Reed, and by failing to adequately investigate the false 402 Health, Smoking, or Safety Violations charge by Defendant Turner, which resulted in the punishment of 3 months in the Disciplinary Segregated Unit, 3 months Commissary Denial, and 3 months C-Grade, which was instituted solely because the Plaintiff exercised his 1st Amendment rights earlier against Defendant Reed.

Defendant Randle, thereby also, retaliated against Plaintiff by permitting and enforcing this retaliatory punishment against the Plaintiff, which was instituted solely when Plaintiff exercised his 1st Amendment rights earlier in filed Grievances and Civil Action against Defendant Reed.

WHEREFORE, Plaintiff prays for judgment against Defendants in Count 1 and Count 2, as follows:

A. A Declaration that the acts and omissions of Defendants violated Plaintiff's Constitutionally protected rights;

B. A Permanent Injunction prohibiting Defendants in further Deliberate Indifferent Acts and Retaliatory Omissions against Plaintiff;

C. Compensatory Damages in the amount of $250,000.00 per each individual Defendant;

D. Punitive Damages in the amount of $150,000.00 per each individual Defendant;

E. Damages for Emotional, Mental and Physical Suffering in
   the amount of $150,000.00 per each individual Defendant;

F. Plaintiff's cost and fees in prosecuting this action;

G. The Expungment of Plaintiff's September 2, 2009 Discipli-
   nary Report;

H. The Back-Pay of time lost from Plaintiff's Institutional
   Job, as well as, to reassign Plaintiff to work;

I. Any further relief that the Court deems just and proper.

Plaintiff, Lester Dobbey, declares, under the penalty of per-
jury, that he has read this Second Amended Complaint, and that the
information contained herein are both true and correct made upon
his personal knowledge, and that which he believe to be true.

Respectfully Submitted,

/s/

LESTER DOBBEY-R16237
Stateville C.C.
Route 53, P.O. Box 112
Joliet, IL 60434

SUBSCRIBED AND SWORN BEFORE ME
ON THIS, 16th, DAY OF, November,
2010

NOTARY PUBLIC.

OFFICIAL SEAL
PHYLLIS BAKER
Notary Public - State of Illinois
My Commission Expires Feb 07, 2011

Seal:

Exhibit-1

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: Sept. 18, 2008 | Offender: Lester Dobbey (Please Print) | | ID#: R16237 |
|---|---|---|---|

| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☒ Medical Treatment
- ☐ Disability **Failue To**
- ☐ HIPAA **Attend To**
- ☒ Other (specify) **Medical Needs.**

☐ Disciplinary Report: ____/____/____
       Date of Report        Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
     **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     **Chief Administrative Officer,** only if EMERGENCY grievance.
     **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
     administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
     Administrative Officer.

Brief Summary of Grievance: I am writing this grievance on the Stateville C.C.'s Health Care Unit and their delay and unresponsive methods in the care of inmate's medical concerns and needs, per se, myself. It has been approximately over 2 months since I have been writing Request Slips to the Health Care Unit to be examined for a condition I am having which could be possibly "Ulcerative Colitis, Crohn's Disease, Inflammatory Bowel Disease or Hemorrhoids".

     I began writing the Request Slips in middle July. And as stated, I have never been seen. And as July had past and some of August began to past without medical attention I began to record ████████ each time I submitted Request ~~____~~ either by institutional mail, the medical box in Bravo Cell-House or when I was called over to the Health Care Unit for other purposes.     (continue on back page)

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_(signature)_      R16237      9·18·08
     Offender's Signature         ID#         Date
     (Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

| Date Received: ____/____/____ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

### EMERGENCY REVIEW

Date Received: 9·29·8

**RECEIVED**
OCT 4 2008

Is this determined to be of an emergency nature?
     ☐ Yes; expedite emergency grievance
     ☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_T. McCann ev_      9·29·8
Chief Administrative Officer's Signature      Date

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE** (Continued)

Dates that I noted of submitted Request Slips are: 8-11-08;
8-17-08; 8-21-08; 8-24-08; 8-25-08; 8-28-08; 8-31-08; 9-4-08; 9-5-08;
9=9-08; 9-10-08; 9-14-08; 9-16-08; and 9-18-08 the same day as I
write this grievance.

In the Request Slips I explained that I have been on-and-
off,abdominal pain,mild-constipation,strain,swelling and loss of
blood during times of defecation. And as I have been constantly
seeking medical attention,but have not been seen or attended to by
any medical personnel,I repeatedly continue to go through these
difficulties of strain and swelling and loss of blood and abdominal
pain,which has been triggering my nerves.

It has been real uncomfortable for ordinary activites for
myself,such as sitting and walking. I have been feeling fatigue at
times and very stressful. And even the stress aggravates the condition
and my nerves. And it seems as if the link between my stress and
my condition has become a vicious cycle. My condition and its symp-
toms has made me anxious,because the symptoms are painful and are
unpredictable. Sometimes it even feels as if a sharp object is in
my abdomen.

Relief Requested: I would like to be fully examined by
a licensed Doctor to find out my problem,then I would like to be
treated for that problem accordingly. Secondly,I want the Health
Care-Director or Administrator to design some type of effective
system,inwhich,an inmate,myself,per se,should not have to submitt
Request Slips for 2 or more months and still do not be seen until
that person has to write a grievance. Third,someone should be
reprimanded for the Delay or No Response by the Health Care Unit.

Exhibit - 2



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker, Jr.**
Director

Stateville Correctional Center / Rt. 53 / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727 -3607 / TDD: (800) 526-0844

# MEMORANDUM

DATE: 9-29-08

TO: Dobbey R16237

FROM:   M. Thompson, C.C. II
        Grievance Office

SUBJECT:   **ATTACHED GRIEVANCE -**

The attached grievance is being returned for the following reason:

_____   It needs to be rewritten and submitted to your counselor on the attached Committed
         Person's Grievance Report.

_____   It was not filed within 60 days of discovery of the incident, occurrence, or
         problem which gives rise to the grievance as required in DR 504F, Grievance
         Procedures for Committed Persons.

__X__   Issue needs to be discussed with your counselor for possible resolution / need to
        have counselor provide a response.

_____   No issue outlined in grievance.

_____   It appears that no attempt has been made to resolve the issue as required by DR
         504F.

_____   Issue is currently being reviewed by _____

_____   Issue previously addressed.  No justification for further action.

_____   Other:                    _____ Forward to Administrative Review Board
                                           P.O. Box 19277
                                           Springfield, IL. 62794-9277

cc:   File

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
### Return of Grievance or Correspondence

Exhibit - 3

Offender: _Dabney_ _Lester_ _R16237_
Last Name      First Name      MI      ID#

Facility: _Sta_

☑ Grievance (Local Grievance # (if applicable): _____)   or   ☐ Correspondence

Received: _0808_    Regarding: _medical_
Date

---

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☑ Use the Committed Person's Grievance Report, DOC 0047 (formerly DC 5657), including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☑ Provide a copy of the Committed Person's Grievance, DOC 0046 (formerly DC 5657) including the counselor's response if applicable.

☐ Provide date(s) of disciplinary report(s) and facility where incident(s) occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:   Administrative Review Board
     Office of Inmate Issues
     1301 Concordia Court
     Springfield, IL   62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Good Conduct Credits (GCC) to Adjustment Committee. If request is denied, utilize the inmate grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to:   Illinois Prisoner Review Board
     319 E. Madison St., Suite A
     Springfield, IL   62706

---

**No further redress:**

☐ Award of Meritorious Good Time (MGT) and Statutory Meritorious Good Time (SMGT) are administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____/_____/_____.
         Date

☐ No justification provided for additional consideration.

---

**Other** (specify): _____

_____

Completed by: _____    _J miller_    _10.9.08_
Print Name        Signature        Date

Distribution:   Offender; Inmate Issues

DOC 0070 (10/2001)
(Replaces DC 710-1274)

**OFFENDER'S GRIEVANCE**

| | | |
|---|---|---|
| Date: October 12, 2008 | Offender: Lester Dobbey (Please Print) | ID#: R16237 |
| Present Facility: Statville C.C. | Facility where grievance issue occurred: Stateville C.C. | |

Exhibit 4

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [X] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____/____/____  Date of Report _____ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: On September 18, 2008, I filed an Emergency Grievance to Warden-Terry L. McCann, regarding the Medical Treatment and the Failure to Attend to Medical Needs.

Within the Emergency Grievance it was stated: " I am writing this grievance on Stateville C.C.'s Health Care Unit and their delay and unresponsive methods in the care of inmate's medical concerns and needs, per se, myself. It has been approximately over 2 months since I have been writing 'Request Slips! to the Health Care Unit to be examined for a condition I am having which could be possibly

" Ulcerative Colitis, Crohn's Disease, Inflammatory Bowel Disease or ████████ Hemorrhoids". I began writing the Request Slips in middle July. And as stated, I have never been seen. And as July had past and some of August began

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ Offender's Signature   (Continue on reverse side if necessary)   ID# R16237   Date 10, 12, 08.

---

**Counselor's Response (if applicable)**

Date Received: 10, 14, 08   [ ] Send directly to Grievance Officer   [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: This grievance cannot be resolved at counselor level so will be forwarded to HCU Administrator / designee to ensure handling. A copy will be forwarded to SIA Grievance office is to log in and ensure handling.

K Rabideau CC2   Print Counselor's Name   K Rabideau   Counselor's Signature   10, 14, 08   Date of Response

---

**EMERGENCY REVIEW**

Date Received: ____/____/____   Is this determined to be of an emergency nature?   [ ] Yes: expedite emergency grievance   [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____ Chief Administrative Officer's Signature   _____ Date

Distribution: Master File; Offender   Page 1.   DOC 0046 (Rev. 3/2005)

Printed on Recycled Paper

mitted Request Slips either by institutional mail, the medical box in Bravo Cell-House, or when I was called over to the Health Care Unit for other purposes.

Dates that I noted of submitted Request Slips are: 8-11-08; 8-17-08; 8-21-08; 8-24-08; 8-25-08; 8-28-08; 8-31-08; 9-4-08; 9-5-08; 9-9-08; 9-10-08; 9-14-08; 9-16-08; and 9-18-08 the same day as I wrote this grievance.

In the Request Slips I explained that I have been on-and-off, having adominal pain, mild-constipation, strain, swelling and loss of blood during times of defecation. And as I have been constantly seeking medical attention, but have not been seen or attended to by any medical personnel, I repeatedly continue to go through these difficulties of , which has been triggering my nerves.

It has been real uncomfortable for ordinary activities for myself, such as sitting and walking. I have been feeling fatigue at times and very stressful. And even the stress aggravates the condition and my nerves. And it seems as if the link between my stress and my condition has become a vicious cycle. My condition and its symptoms has made me anxious, because the symptoms are painful and unpredictable. Sometimes it even feels like a sharp object is in my adomen.

Relief Requested: (Was) I would like to be fully examined by a Licensed Doctor to find out my problem, then I would like to be treated for that problem accordingly. Secondly, I want the Health Care-Director or Administrator to design some type of effective system, inwhich, an inmate, myself per se, should not have to submit Request Slips for 2 or more months and still not be seen until that perosn has to write a grievance. Third, someone should be reprimanded for the Delay or No Response by the Health Care Unit."

This Emergency Grievance was deemed, "Not an Emergency, and that I should submit the grievance in the normal manner, to be discussed with the counselor for possible resolution, that counselor can give a response." Ultimately it was denied on September 29, 2008, by the Warden-Terry L. McCann.

On September 30, 2008 I was on a call-pass to see Dr. Fink, and as I was in the H.C.U.'s holding cage, Warden-McCann walked into the Health Care Unit, inwhich, I stopped him and admonished him about the Emergency Grievance that I had filed to him and how he had denied it. He then made inquiry as to what the grievance was about, and I told him it was about problems I'm having with my Bowels and Blood. He then told the H.C.U. door officer c/o Banks, to make sure I did not

Exhibit 4

October 12, 2008 Offender: Lester Dobbey
(Please Print)

Present Facility: Stateville C.C.

ID#: R16237

Facility where grievance issue occurred: Stateville C.C.

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☒ Staff Conduct ☐ Dietary ☒ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☐ Other (specify)
☐ Disciplinary Report: ___/___/___
Date of Report Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: leave until I see a Doctor, c/o Banks complied.

After seeing Dr.Fink, I was sent to the E.R., inwhich, I was seen
by P.A. Ms.Williams, who then made inquiry as to what problems was I
having. I elaborated on the Bowels and Blood, Adominal Pains, Back Pain
and Sleep Deprivation that I was encountering. She then said that she
could help out with two out of the three problems. Ms.Williams then
performed some physical examinations by rubbing on my stomach to see
if she could feel anything or a possible ulcer. She then said that
everything felt normal, and then asked me what color does the blood
come out, inwhich, I did not know at the specific time. She told me
that it was important to know what color the blood is, and I told her
that the next time it happens I would take notice, and let her know.
Thereafter, Ms.Williams perform▊ ▊nother physical examination,

Exhibit 4

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature ID# R16237 10-12-08
(Continue on reverse side if necessary)

**Counselor's Response** (if applicable)

Date Received: 10,14,08 ☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: ✱Answered on Page 1✱

K Rabidean Cer
Print Counselor's Name

Counselor's Signature 10,14,08
Date of Response

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature? ☐ Yes: expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature Date

by doing a prostate check and a check for external and internal hemorrhoids. She found No hemorrhoids and that my prostate was okay, she then rubbed my back to see if she could feel anything that was abnormal in the muscle, and I told her it was more of a bone problem, and explained to her that I had made certain normal moves, in which, I would move and get stuck in a leaning position as I immediately would feel a sharp pain shoot up in my spine, and I would feel momentarily paralized.

Ms. Williams then checked my Medical File and took notice that I had not had labortory test since the year 2005, and also took notice that in the back of my file there were numerous Request Slips that I had been writing and did not know why I had not been put on call-line. She then ordered for me to give a blood and urine sample for test to see if something would come up, in which, a determination could be made as to the problems I was having. Then she logged me in for a follow-up.

On October 7, 2008, I was placed on call-line to the E.R. for the follow-up, in which, I was seen by Ms. Zhang. I explained to her the problems I was having, the physical examinations Ms. Williams had performed, and that I had taken a blood and urine test to see if any-thing would appear. She reviewed the test results and concluded that nothing was wrong with the blood or urine, and that ultimately I was alright. Then she told me for the adominal pains I should rub the painful area -100 times a day, and that she was going to prescribe some muscle-relaxers for me, which should help with the pains I am having and it should help with some of my stress, in which, was the conclusion of my follow-up.

On October 10, 2008, I received a pack of 10, 10MG Cyclobenzaprine tablets.

I am writing this grievance because I am still having the Bowels and Blood problem, and the pains in my back and adominal pains, and I don't feel that all correct measures were taken within this Health Care Unit's power to diagnos my condition.

Relief Requested: Any and all further examinations which can render a diagnosis to my condition, including, but not limited to a; Biopsy, Colonoscopy, Gastroscopy and a X-ray with Barium, and if the Health Care Unit of Stateville C.C. cannot provide the specialist needed to perform these examinations, that I be examined at a Community Hospital that can provide the adequate attention needed.

*Exhibit 4*

STATE OF ILLINOIS  )
                   ) SS
COUNTY OF WILL     )

Exhibit - 5

## AFFIDAVIT

I, LESTER DOBBEY being first duly sworn under oath depose and state
that the foregoing is true and correct and made upon my personal knowledge and I
am competent to testify thereto.

That on NOVEMBER 27, 2008 I WAS IN
my CELL At STATEVILLE CORRECTIONAL CENTER, BRAVO
HOUSE CELL #2116, inWhich, I Observed the
WARDEN - TERRY L. McCANN AND Deputy Director
PIERCE Walking on 2 Gallery inWhich, I
Stopped WARDEN - McCANN And told him About
my BOWELS And Blood Problem And that When he
had made the HEALTH CARE SEE ME they didn't do
Enough to diagnose ME, So I Filed A GRIEVANCE
trying to get A diagnosis to my problem. He then
told me that the GRIEVANCE will TAKE CARE of
it, And that I Should just go to Chow
BECAUSE it WAS Thanksgiving. Then he WALKED
OFF With the Deputy Director.

_____
                        AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 5th DAY December, 20 08

_____
NOTARY PUBLIC

OFFICIAL SEAL
PHYLLIS BAKER
Notary Public - State of Illinois
My Commission Expires Feb 07, 2011

Exhibit - 6

## AFFiDAViT

I, Nicolas Martinez, declare under the penalty of perjury, that the information contained is both true and correct, and if called as a witness I will testify that:

On Thanksgiving Day November 27, 2008 I was waiting to go to lunch when warden Mc Cain and the deputy director came through B-House. My cellie, Lester Dobbey stoped the warden and started talking about his medical problems and that he wasn't diagnosed and that he had a grievance in, for almost (2) two months and still haven't been seen. Warden Mc Cann told him that the grievance would be taken care of then walked off.

I declare under the penalty of Perjury, 28 U.S.C 1746, 18 USC 1621 that this Affidavit is true and correct.

Nicolas Martinez

Nicolas Martinez
ID# R40397

STATE OF ILLINOIS }
COUNTY OF WILL }

Exhibit-

AFFIDAVIT                              Exhibit-7

I, Israel Ruiz, declare under the penalty of perjury, that the information contained is both true and correct, and if called as a witness I will testify that:

ON Thanksgiving Day November 27, 2008 I was waiting to go to lunch when Warden McCann and the Depty Dirrector came through B-House. My neigbor Lester Dobbey stoped the warden and started talking about his medical problems and that he wasn't diagnosed and that he had a grievance in for almost (2) two months and still havent been seen. Warden McCann told him that the grievance would be taken care of then walked off.

I declare under the penalty of perjury, 28 USC 1746, 18 U.S.C 1621 that this AFFidavit is true and correct

Israel Ruiz
AFFIANT

Israel Ruiz #K83131
State Ville CC
P.O BOX 112
Joliet IL 60434

County of Will )

Exhibit - G

Exhibit - 8

## AFFIDAVIT

I, Rickey Robinson-El #K82958, depose and state that the following is true and Correct, made upon my personal knowledge and belief; if called to be a witness I am competent to testify,

1.) ON November 27, 2008 while in my cell, I heard a few guys holler over the gallery, "Warden in the cell-house."

2.) Being alert that the Warden was in the cellhouse. I Soon thereafter observed Warden McCann and the Deputy Director walking through B-House on 2 gallery.

3.) My neighbor "Lester Dobbey" Stopped the Warden as he Crossed past his line of sight.

4.) As I can remember Lester Dobbey was making the Warden aware of a medical issue. That he was without a diagnosis. That he had grieved the issue 2 months ago and hadn't heard anything, nor had he been seen.

5.) Warden McCann told him he would take care of it a proceeded about his business.

Further Affiant sayeth not.

I de Rickey Robinson-El, the undersigned declare the penalty of Perjury according to 28 U.S.C. 1746; 18 U.S.C. 1621 that this Affidavit is true and correct as I know it to be.

/S/ Rickey Robinson-El © ucc 1-2017
AFFiant; Rickey Robinson-El/ without Recourse
secured party Creditor

Exhibit - 9

*Affidavit*          Exhibit - 9

That on november 27, 2008 I, Terrell Thomas heard my neighbor stop the warden McCann and the Deputy Director as they were walking on 2 gallery in B-house and till him about medical problem that he was having and that he had a grievance in far over a month. the warden told him that the grievance will be taken care of and said its thanksgiving go eat then he walked away.

I write this information in this affidavit on my own free will. under the penalty of perjury 28 U.S.C 1746 that this is all true. and I will testify to it.

R 32998

TERREll THOMAS

Exhibit - 10

## AFFIDAVIT

On the date of Nov. 27, 2008 I keith L. Williams was housed in cellhouse B, cell location 415. That on the morning of the above date I witness Warden McCann and the Deputy Director as they made rounds on a gallory. I then heard my neighbor Lester Dobbey holler down to 2 gallory and speak with these gentlemen in reguards to medical problems that he was having, and that, he had filed a grievance on the grounds of his medical problem and had not receive treatment or a response to his grievance. The Warden said to my neighbor that his grievance would be token care of and that it was Thanksgiving to go eat. I keith Williams state under the penalty of perjury 28 U.S.C 1746 that the above statement is true and will come to court and testify the same.

Keith L. Williams

keith L Williams



Exhibit - 11

# AFFIDAVIT

4-08

I Andre Patterson bear witness
that on Thanksgiving day, right before
lunch, Warden McCann walking
through B-house (2 gallery), while
walking through I overheard inmate
Dobbey, who is in 416 (I am in 215),
stop the warden and voice an issue
concerning lack of medical attention,
as well as a grievance about the
same issue, which had been filed
a couple months prior. Warden McCann
then preceded to say, "The grievance
will take care of itself..... it's thanks-
giving, go eat!"

Andre Patterson #K04398

B-215

I declare under the penalty of perjury,
pursuant to 28 U.S.C. 1746 and 18 USC 1621
that the forgoing is true and correct, and if
called as a witness I am competent to
... the stated information.

## Grievance Officer's Report

**Date Received:** October 20, 2008      **Date of Review:** March 23, 2009     **#** 0301

Lester Dobbey          R16237

**Nature of Grievance:** Medical Tx

Exhibit 12

**Facts Reviewed:** Grievant alleges he has been having abdominal pains, and loss of blood while deficating. Has repeatedly asked to be seen to no avail.

**Grievance written:** 10-12-08

**Sent to HCU:** 10-14-08

**Medical response received:** ~~03-03-09~~ 02/24/09 mJ

Per Liping Zhang, MD: The writer reviewed the offender medical records. He received proper care for his chronic back pain.

It appears that this grievance issue has been resolved.

This Grievance Officer has no medical expertise or authority to contradict the doctor's recommendation/diagnosis.

**Recommendation:** No further action necessary at this time.

| | |
|---|---|
| Margaret Thompson | Margaret Thompson |
| Print Grievance Officer's Name | Grievance Officer's Signature |

(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

---

### Chief Administrative Officer's Response

**Date Received:** 3-27-09    ☑ I concur    ☐ I do not concur    ☐ Remand

**Comments:**

Chief Administrative Officer's Signature         3-27-09

Date

---

### Committed Person's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

| Committed Person's Signature | ID# | Date |
|---|---|---|
| | | |

Exhibit-C   Exhibit 13

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

1 of 8.

| Date: April 1, 2009 | Offender: (Please Print) Lester Dobbey | ID#: R16237 |
|---|---|---|

| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

Deliberately Indifferent To Medical Needs and Care

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] Disability
- [x] Staff Conduct
- [ ] Dietary
- [x] Medical Treatment
- [ ] HIPAA
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Other (specify):

- [ ] Disciplinary Report: ___/___/___
  Date of Report _____ Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

**Brief Summary of Grievance:** This grievance is a continuation of the inadequate medical treatment I have been enduring since the filing of another grievance that I filed on the medical treatment on October 12, 2008. The complaint is based on myself steadily complaining, and not adequately being treated for a Back Problem and Blood in my Stool, which has been Ongoing since approximately July of the year 2008.

I have spoke to several I.D.O.C. staff members in regards to my condition, and the lack of responses to my grievance from October 12, 2008, where No resolutions have been made for my conditions.

On January 13, 2009 at approximately 9:30 a.m. as Internal Affair Officer-Kissell walked 4 Gallery in the Bravo Cell-House, (inwhich, I am housed in Bravo-416), I stopped him and told him of my condition

**(continue on back)**

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ Offender's Signature      R16237      4/1/09
                                          ID#          Date

(Continue on reverse side if necessary)

---

## Counselor's Response (if applicable)

| Date Received: 4/5/09 | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

**Response:** This grievance cannot be resolved at Counselor Level so will be forwarded to HCU Admin Klosirek/Adm. there again. Copy will also be sent to STA Griev. Officers to log in and ensure handling. Dobbey has in fact filed before and still needs medical treatment.
*K Rabideau CC2*

_____ Print Counselor's Name      _____ Counselor's Signature      4/6/09 Date of Response

---

## EMERGENCY REVIEW

| Date Received: ___/___/___ | Is this determined to be of an emergency nature? | [ ] Yes: expedite emergency grievance |
|---|---|---|
| | | [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

_____ Chief Administrative Officer's Signature      _____ Date

Distribution: Master File; Offender                Page 1                DOC 0046 (Rev. 3/2005)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)          2 of 8.

with seeing Blood in my Bowels, and how I had been previously seen, but the problem was Ongoing. I further explained to him that I had filed a grievance in October 2008, but had not received any responses from the Grievance Officers, nor the H.C.U. Administrator/Designee, and that I felt I needed some type of further examinations. I/A Officer-Kissell then wrote down my Name, I.D. Number and Cell Location, and said that he would look into it. I did not hear anything back from him.

On January 17, 2009 at approximately 7:56 a.m., I stopped a Medical Technician, ('whom I believe to be named Joe), who was walking 4 Gallery in the Bravo Cell-House, (inwhich, I am housed in Bravo-416), and upon myself stopping him, I explained to him my condition, then showed him a sample of toilet tissue that I had preserved which contained Blood from my Bowels. I further explained to him that it had been a problem since atleast July of the year 2008, and that I had been seen by the P.A.-Mrs.Williams, who examined me and found No Internal or External Hemorrhoids, after commencing what I believe to have been a Hemoculture Exam, but No signs of Blood was found, and that was the reason why I had preserved a toilet tissue sample. He then told me that he would have me called over to the Health Care Unit that upcoming Monday, which would have on the 19th of January. He wrote down my Name, I.D. Number and Cell-Location. I was never called over or seen on the 19th of January.

On January 20, 2009, at approximately 3:41 p.m., I stopped the Deputy Director-Pierce and Major-J.Thomas, as they walked 4 Gallery in the Bravo Cell-House, (inwhich, I am housed in Bravo-416), and explained to them my condition and the exams that had been performed, regarding the Blood in my Bowels, and that it was still Ongoing as a problem, and that I had filed grievances pending with the Grievance Officer and the H.C.U. Administrator/Designee since October of 2008, but had not received any responses. The Deputy Director-Pierce ordered Major-J.Thomas to take down my information and check on the situation, which Major-J.Thomas complied, and wrote down my Name, I.D. Number and Cell Location, and told me that my grievance had to be answered, and he would talk to Assistant Warden-Hosey. I never heard anything from either Deputy Director-Pierce, Major-J.Thomas or Assistant Warden-Hosey.

On January 28, 2009 at approximately 11:30 a.m., as I was in the Bravo Cell-House (Holding Cage) awaiting to go back to my work assign-ment, from a lunchbreak, Internal Affair Officer-Kissell came inside the front door of the Bravo Cell-House, where I then stopped him and asked him did he investigate my concern of my condition and the grievance that I had filed in October of 2008 without any responses. He then asked to see my identification card and wrote down my Name, I.D. NUmber and asked me for my Cell Location. He then told me that he was going directly to

(continue on next page)

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: April 1, 2009 | Offender: (Please Print) Lester Dobbey | ID#: R16237 |
|---|---|---|

| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify):

**Deliberately Indifferent To Medical Needs and Care.**

- [ ] Disciplinary Report: ____/____/____
      Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** check on it once he left the Cell-House. I never heard back from I/A Officer-Kissell.

I believe on this same night of January 28, 2009 I received a package of medicine named Docusate, which contained 60 capsules. The package directed me to take (2) capsules by mouth daily for 30 days. I complied, but the problem is still Ongoing.

On February 5, 2009, while working at my assignment in the Law Library, Assistant Warden-Reed, came into the Law Library, inwhich, I stopped him and told him of my problems that I was experiencing with Blood in my Bowels, which he then told me, quote, "Shit, that shit be happening to me too..." I then asked him, quote, "And what, you don't take it serious?" I then further explained to him that I had received

(continue on back)

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature _____ ID#: R16237 Date: 4, 1, 09

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: ____/____/____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

### EMERGENCY REVIEW

Date Received: ____/____/____

Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____ Date _____

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)          4 of 8.

and all the people that I had talked to about my problem. And further explained to him that I didn't want to continuously stop every person that I see, and then they probably would deem me as a pester, nuisance or a malingerer. Assistant Warden-Reed told me that it was understandable.

I further explained to him that I had filed grievances, and had one pending since October 2008, that had not been answered by the Grievance officer or the H.C.U. Administrator/Designee. Assistant Warden-Reed then asked me what was I trying to achieve, which I told him further examinations by a Specialist, and either an X-Ray with Barium, a Colonoscopy, a Gastroscopy, or a Biopsy, or any other exam that would give me a Scientific Medical Conclusive Diagnosis of why I see Blood in my Bowels. He then asked me to write down my information. I complied. He then further told me that he would look into the matter once he goes to the Health Care Unit. But I never heard anything back from Assistant Warden-Reed.

On March 2, 2009 I received a Call-Pass for Health Care for a Physical, but the pass was cancelled dsue to Bravo Cell-House being on a level one lock-down, (inwhich, I am housed in Bravo-416). On March 4, 2009 I had another Call-Pass for the Health Care Unit for a Physical, but as Bravo Cell-House was still on a level one lock-down, this second pass was cancelled also.

On saturday, March 21, 2009, at approximately 11:40 a.m., while I was on the Southyard on the Basketball Court, and a basketball bounced in my direction, where I then reached to grab the basketball, I felt a sharp pain shoot up my spine, whereas, I felt immediately a momentary paralizing feeling in my Back, and I felt my Back began to swell-up, and I began to feel as if my body was crooked. And as I took notice that the pain, swelling and crooked feeling was not leaving, I went to the Entrance/Exit Gate of the yard and called a Officer that I saw, (whom name I believe to be c/o-Durant), and explained to him what had happened and the pain I was feeling and experiencing. He called on his radio for a Medical Technician, inwhich, minutes later a Med.Tech., (who name is unknown to me at this time), came to the Southyard with a wheelchair. After I was placed in the wheelchair I was transported to the Health Care Unit.

Upon reaching the Health Care Unit, I was seen by Dr.Zhang, where I explained to her that I had been seen previously for the same Back problem, where I experienced pain, swelling and a momentary paralizing feeling, inwhich, I had filed a grievance and other documents regarding the matter. She then had me take off my shirt, where then she made inquiry as to where was I feeling the pain. I told her in the upper-

(continue on the next page)

ILLINOIS DEPARTMENT OF CORRECTIONS

## OFFENDER'S GRIEVANCE

5 of 8.

| Date: April 1, 2009 | Offender: (Please Print) Lester Dobbey | ID#: R16237 |
|---|---|---|

| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☒ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☒ Other (specify):

**Deliberately Indifferent To Medical Needs and Care.**

☐ Disciplinary Report: _____
　　　　　　　　　　Date of Report　　　　　　　　　Facility where issued

Note:　Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
　　Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
　　Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
　　Chief Administrative Officer, only if EMERGENCY grievance.
　　Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
　　administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
　　Administrative Officer.

**Brief Summary of Grievance:** mid-section of my Back, and that the pain I was feeling

felt as if I had a slipped disk. Dr. Zhang then took the point of her

hand and went down the left, right and center of my spine. She then

diagnosed me as having Scoliosis. I then asked her could I have an

X-Ray taken, and she agreed by scheduling me for one.

　　　　I further told Dr. Zhang and the CMT-Joe, that I was still experi-

encing Blood in my Bowels, and explained to them that I had been pre-

viously seen twice, but had not received any remedy when I was seen

and that was the reason why I had stopped CMT-Joe, and showed him the

sample of toilet tissue with Blood and Bowels. And that I had received

▬▬▬▬ some medication by the name of Docusate/Colace, but the problem

was still Ongoing. I further explained to them both that when I had

　　　　　　　　　　　　　　　　　　　　　　**(continue on back)**

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ Offender's Signature | R16237 ID# | 4/1/09 Date |
|---|---|---|

(Continue on reverse side if necessary)

### Counselor's Response (if applicable)

Date Received: _____ / _____ / _____　　☐ Send directly to Grievance Officer　　☐ Outside jurisdiction of this facility, Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

### EMERGENCY REVIEW

Date Received: _____ / _____ / _____　　Is this determined to be of an emergency nature?　　☐ Yes; expedite emergency grievance
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date |
|---|---|

been seen by Dr.Zhang once before,she had told me to rub my stomach a hundred times a day,and that I would be alright. Dr.Zhang then asked me did I get checked for hemorrhoids,and I told her that P.A.-Mrs.Williams had told me that I did not have either Internal or External Hemorrhoids, after commencing a Hemoculture Exam. Dr.Zhang then asked me was I engaging in Anal-Sex. I told her definitely not,No. She then asked the Med. Tech. who came to get me off the yard,whom name I am uncertain of at this time,for my Chart/File,and he said that he could not find it anywhere at the time.

    Dr.Zhang then gave me some medication named,METHOCARBAMOL,which consisted of 30 tablets at 750 MG. I was then told that since my Chart/ File could not be found at the time,I would be called back over for an Evaluation on March 25,2009.

    On March 24,2009,I went on the Call-Pass for an X-Ray on my Back. And to the present abovementioned date I never received any notification of any results.

    On March 25,2009,I went on the Call-Pass to the Health Care Unit for the Evaluation in the E.R.,but the Evaluation was cancelled without explaination,and set for rescheduling for April 1,2009. On this same night of March 25,2009,after taking the medication Methocarbamol,I beagn to experience a slight numbness in my upper-left shoulder,as my lower-body,from my waist down began to tremble,as I also felt a mild pressure in my chest.

    On March 27,2009,I experienced the numb feeling in my same shoulder,and felt the same type of pressure in my chest after taking the medication Methocarbamol. I also felt very moodish while taking this medication,and therefore,I stopped taking the medication,and had to endure the complications of my Back.

    On April 1,2009,I went on a Call-Pass to the Health Care Unit for a Physical. Upon the Physical,I was first seen by a Nurse whom name I believe to be Jennifer,she took my blood pressure,weight,vision,and asked me questions based on a Questionaire. Based on some of the questions, I had explained to her that I was experiencing Blood in my Stool,inwhich, I was supposed to be seen for an Evaluation,and further told her about the pain I was experiencing in my Back,inwhich,I believe it to be a Slipped Disk,and that the Doctor had told me that I had Scoliosis.

    Thereafter,I was seen by Dr.Zhang for continuation of the Physical. Dr.Zhang began to check my eyes,ears,knees and heart,and asked me a series of questions based on another questionaire,as I was answering her and she asked me have I had Diarrhea,I told her that I had just experienced Diarrhea,where I was taking approximately 8 to 10 Diarrhea Bowel Movements in one night,for like 3 to 4 days. And then I asked her could that have

(continue on next page)

# Illinois
## Department of
# Corrections

EXhibit - 14

**PAT QUINN**
Governor

Roger E. Walker Jr.
Director

1301 Concordia Court / P.O. Box 19277 / Springfield, IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-00

April 17, 2009

Lester Dobbey
Register No. R16237
Stateville Correctional Center

Dear Mr. Dobbey:

This is in response to your grievance received on April 9, 2009, regarding medical (treatment-abdominal pains-10/12/08), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

Per Dr. Zhang, Offender received proper care for his chronic back pain.

The Grievance Officer's report (0301) and subsequent recommendation dated March 23, 2009 and approved by the Chief Administrative Officer on March 27, 2009 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the grievance be denied as the offender's medical needs are being addressed by the Stateville Correctional Center Administration, in accordance with established policies and procedures.

FOR THE BOARD: _____
Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

4/24/09

cc:   Warden Shaw, Stateville Correctional Center
      Lester Dobbey, Register No. R16237

Exhibit - 15

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

Stateville Correctional Center

| Offender Information: | | |
|---|---|---|
| Lobby | | ID#: R16237 |
| Last Name | First Name | Mi |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 3-29 120p | LPN note I/m was Ø show for appt. _____ Morette RN | |
| 5-16-9 (psychologist note) | | |
| 12:15 | Inmate Botkey was seen for follow up. Due 1 Dec 2012 | R w/ 3 mth 8-24-5 C3 |
| 6/10/09 12:10 pm | | |
| | PA NOTE | 1. Stool sample x3 |
| | 28 y/o Afr/Am c/o continued problem | to lab evaluation |
| | c 16 x 12y, COLD x 2wk Back | 2. flexeril 10mg |
| | feel is a bone problem, blood | q HS x 14 days |
| | in stool fright sided. | c 2 refills |
| | 0= gen= wnl | 3. Tylenol 500mg |
| | HU= wnl | ii qd / BID prn |
| | Ext= wnl | #60 x 2mos |
| | abd = nl. | 4. PT referral Eval |
| | A= 1. Chronic GP | 5. A Bilingel x 3mos |
| Distribution: Offender's Medical Record | 2. S12 blood in stool | prn |
| | | RHvd RN |

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002) (Replaces DC 7147)

Exhibit - 16

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**Stateville Correctional Center**

Offender Information:

Last Name: Dobbey   First Name: Lester   MI:   ID#: R16253

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7.27.9 9-45A | MD not<br>S- No complts<br>O- WNL<br>A- I/M was placed in the infirm overnight for collection of stool sample in the morning | P<br>Stool sent for lab<br>Discharge the I/M<br><br>P61<br>noted Jeaneau 7/27/09 |
| 7/27/09 12pm | RN Note<br>S- "I have the Stool Sample"<br>O- A+O X3, Stool Sample Obtained and D/c'd back to cellhouse<br>A- Medical   Jeaneau R | P- D/c to Cell House |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper

Exhibit - 16

ILLINOIS DEPARTMENT OF CORRECTIONS-

**Offender Outpatient Progress Notes**

Stateville Correctional Center

Offender Information:

Dobbey     Lester     ID#: R16237
Last Name     First Name     MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/14/09 | Psychologist Note<br>This offender was seen for routine follow up. He complains about sharp pains in his spine and stomach. He has had ineffective treatments. He is dx scoliosis. He denies any current medications. At age 17 he was shot eleven times. He reports (has) moments of being paralyzed. | ① Follow up on a PRN basis.<br>Christ Woods, MS psych III |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

*Printed on Recycled Paper*

Exhibit - 17

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**Stateville Correctional Center**

| Offender Information: | | | |
|---|---|---|---|
| DOBBEY | LESTER | | ID#: R16237 |
| Last Name | First Name | Mi | |

| Date/Time 3:43 pm | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8/14/09 | PA NOTE | MD/SC 8-15-09 |
| | c/o continued or recurrent UOP | PA given hand written |
| | and abd pain | pass, not on roadmap |
| | | [signature] PA |
| 8/15/9 | RN note | |
| | I/m was Ø show for HC appt. — | |
| | | [signature] RN |
| | MD Note | |
| 8/18/9 | S: Abdominal pain for 2 weeks. | Pl. colace 100mg |
| | No nausea. No vomiting. No | PO Bid x 30 days |
| | diarrhea. No constipation | 2. Fiber con 4 PO |
| wt 193 | O: O×3 NAD. | Qd x 30 days. |
| BP 156/84 | PERRLA EOM z. | 3. Push oral fluids |
| HR 56 | Heart S₁ S₂ SLR ⊖ | 4 neurontin 300mg po |
| T 98 | Abd benign soft. Untender | Bid x 30 days |
| repeat BP | No Mass. No rebound. | |
| 154/85. | A: chronic pain. Normal exam. | [signature] |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper