IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LESTER DOBBEY (R-16237), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10-cv-3965 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| MICHAEL RANDLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lester Dobby brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his serious medical condition (*i.e.*, gastrointestinal and abdominal issues). Before the Court are Medical Defendants'[1] [246] and State Defendants'[2] [251] motions for summary judgment, as well as Plaintiff's motion for summary judgment against Medical Defendants [258]. For the reasons stated herein, Medical Defendants' motion [246] and State Defendants' motion [251] are granted, and Plaintiff's motion [258] is denied. Plaintiff's motion to strike State Defendants' motion for summary judgment and L.R. 56.1 statement of facts [267] is denied.

## I. BACKGROUND

### A. Factual Background

At issue in this case is Defendants' treatment of Plaintiff's gastrointestinal and abdominal issues from when they first arose in 2008 through the filing of this lawsuit in 2010 and beyond.

---

[1] "Medical Defendants" include Wexford employees Dr. Liping Zhang and Physician's Assistant LaTonya Williams.

[2] "State Defendants" include Guy Pierce, Deputy Director of IDOC; Jackie Miller, a member of the IDOC Administrative Review Board; Terry McCann and Frank Shaw, Wardens of Stateville; Marvin Reed and Mark Hosey, Assistant Wardens at Stateville; J. Thomas, a Correctional Major at Stateville; Albert Kissell, an intelligence officer at Stateville; and Margaret Thompson, a grievance officer at Stateville.

Stateville medical staff first became aware of Plaintiff's medical concerns on September 30, 2008, when Physician's Assistant (and Defendant) LaTonya Williams evaluated Plaintiff for complaints of constipation and blood in his stool that had been ongoing over the past several months. Ms. Williams conducted a physical exam and took down Plaintiff's history. The physical exam was "normal." Ms. Williams ordered blood tests and scheduled Plaintiff for a follow-up visit to discuss the results one week later. The test revealed that there was no blood in Plaintiff's stool.

On October 7, 2008, Defendant Dr. Zhang evaluated Plaintiff for abdominal pain and back pain.[3] Dr. Zhang prescribed Plaintiff stool softeners, ordered Plaintiff to "push fluids," and instructed Plaintiff regarding certain physical movements that he could do in his cell to alleviate his symptoms (such as rubbing his stomach). Plaintiff saw Dr. Zhang again on November 22, 2008 regarding treatment for Plaintiff's back pain, but there is no indication on the Medical Record Progress Notes from that visit that Plaintiff complained about any abdominal pain at that time.

On January 17, 2009, Plaintiff was seen by CMT Sheehy to discuss Plaintiff's complaints that he had blood in his stool. Mr. Sheehy's progress notes indicate that Plaintiff reported that the blood was "worse before but now it is just a little bit." Plaintiff was prescribed Colace (a stool softener) and was ordered to follow up in 30 days. On March 21, 2009, CMT Barnes saw Plaintiff for complaints of back pain. The medical records generated to memorialize this visit

---

[3] Plaintiff raised his back pain in his initial complaint in this case, but due to concerns regarding unrelated claims against different Defendants, see *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), Plaintiff's claims regarding back pain were severed pursuant to Fed. R. Civ. P. 21 and filed as a separate suit, *Dobbey v. Zhang*, Case No. 11-cv-2374 (N.D. Ill.). In that case, summary judgment was granted to the defendants on September 10, 2013, and the Seventh Circuit Court of Appeals affirmed the judgment on April 1, 2015. *Dobbey v. Zhang*, 608 F. App'x 406 (7th Cir. 2015).

make mention of "H. pylori"—a stomach bacteria that can cause abdominal pain—indicating that Plaintiff discussed his stomach condition with the CMT during this visit.

On April 1, 2009, Plaintiff filed a grievance regarding his medical care. In the grievance, Plaintiff states that on March 21, 2009, he was examined by Dr. Zhang, prescribed Colace, and that Physician's Assistant Williams had ruled out internal and external hemorrhoids. Plaintiff also stated that Dr. Zhang had given him a hemoculture exam, inquired as to whether he was engaging in anal sex, prescribed him methocarbamol, and scheduled him for another medical visit on March 25, 2009 because his file could not be located. The March 25, 2009, medical visit was rescheduled for April 1, 2009, when Plaintiff received a physical examination. During the physical examination, Plaintiff's vital signs were tested, and Dr. Zhang examined Plaintiff's eyes, ears, knees, and heart; the record of the examination also indicates that Plaintiff's abdomen and anus were "normal." The correctional counselor forwarded Plaintiff's grievance to the health care unit on April 6, 2009.

On June 10, 2009, Plaintiff was seen for continuing problems of lower-back pain. Plaintiff also complained of blood in his stool. Plaintiff received pain medication and a stool sample was ordered sent to the lab for evaluation. When Plaintiff failed to provide a stool sample by July 26, 2009, Dr. Ghosh—the new medical director at Stateville—was notified and the procedure on how to collect a stool sample was explained to Plaintiff. Plaintiff was given all the necessary supplies to collect the stool sample. On July 27, 2009, Plaintiff was placed in the infirmary overnight for collection of the stool sample. While mucus was present, no blood was found in the stool sample.

On August 14, 2009, Plaintiff was seen by a physician's assistant for complaints of recurrent lower-back pain and abdominal pain. On August 18, 2009, Plaintiff was seen in the

Health Care Unit for complaints of abdominal pain for the prior two weeks, but he reported no nausea, vomiting, diarrhea, or constipation. A physical exam revealed that Plaintiff's abdomen was benign, soft, non-tender, and had no masses. The assessment from the August 18, 2009 appointment was chronic pain with a "normal" exam. Colace and fiber supplements were prescribed and Plaintiff was given Neurontin in regards to his back pain and ordered to push fluids. Plaintiff was seen again by medical staff on August 27, 2009 for back pain. The record of that examination reflects no complaints of abdominal pain. Plaintiff was prescribed pain medication for his back.

In October of 2009, Plaintiff saw medical personnel on three occasions (the 7th, 16th, and 21st) for complaints regarding his back pain and a loose toenail. Plaintiff made no mention of any abdominal pain during these visits. Plaintiff had a sick-call appointment on October 9, 2009 that was cancelled due to insufficient medical staffing. Plaintiff also saw medical personnel on November 16, 2009 regarding dental issues, but made no complaint about abdominal pain.

In 2010, Defendant Williams prescribed Plaintiff Zantac and/or Prilosec at different times to address his complaints. When Plaintiff made complaints that one of the two medications did not work, Ms. Williams switched the medications to determine if the other would be more effective. In February, March, and April of 2010, Plaintiff received physical therapy for his back, and made no complaints about abdominal issues.

On June 16, 2010, Plaintiff complained of headaches and of abdominal pain that mostly occurred after meals, three to five times per week. Plaintiff complained of a tightening sensation, sometimes with "needles." Plaintiff was diagnosed with GERD (Gastroesophageal reflux disease), increased blood pressure, and cephalgia (headache). Plaintiff's treatment plan included

blood-pressure monitoring, stool-sample analysis, migraine medication, and an increase of clear fluids. Plaintiff was also given Prilosec and antacids for his stomach pain.

On July 31, 2010, Plaintiff again complained regarding abdominal pain. He saw a physician's assistant on August 6, 2010 and reported that his abdominal pains were still occurring three to five times per week following eating, regardless of whether he took the prescribed medication or not. Plaintiff's stool sample (taken the month before) revealed no blood, and Plaintiff confirmed that he did not have blood in his stool "lately." Plaintiff was referred to the medical director for evaluation and given Zantac and antacids. On September 8, 2010, Plaintiff was again seen by a physician for abdominal complaints. The physician examined Plaintiff and noted that there was no nausea or vomiting and no history of reflux. Plaintiff was assessed as having abdominal pain and prescribed Mylanta and Prilosec and ordered to avoid NSAIDs.

On October 14, 2010, Plaintiff was seen in the infirmary and scheduled for a further appointment on October 20, 2010. At the medical appointment on October 20, 2010, Plaintiff reported that he continued to suffer intermittent abdominal pain and that he had one bad episode that lasted a day. Plaintiff was assessed as having chronic abdominal pain, referred to Dr. Ghosh, and blood tests were ordered.

On November 17, 2010, Plaintiff reported to a physician's assistant that he had injured his back and that he was still experiencing stomach pain. On November 19, 2010, Plaintiff was seen by a physician for intermittent pain in his upper abdomen where he reported no vomiting and no blood in his stool. Plaintiff was examined and his treatment plan was to continue with Mylantin and Prilosec for his stomach pain. Plaintiff was also referred to the University of

Illinois at Chicago Medical Center ("UIC") for a GI consult and for an EGD (esophagogastroduodenoscopy).

On December 22 and 29, 2010, Plaintiff received medical care for headaches and made no complaint of abdominal issues. On January 20, 2011, Plaintiff complained that he had been nauseous for 24 hours and was taken to the ER. Plaintiff was evaluated and diagnosed with a fever. Plaintiff was given Tylenol and intravenous fluids, a urinalysis was ordered, and Plaintiff was started on antibiotics. Plaintiff was kept under 23 hour observation and a chest x-ray was ordered.

On January 21, 2011, Plaintiff was hospitalized due to nausea, vomiting, and abdominal pain. Plaintiff was prescribed intravenous fluids and antibiotics and monitored. Plaintiff was discharged on January 24, 2011 with continued prescription for Prilosec and Mylanta. On February 7, 2011, Plaintiff was given a diagnostic procedure for "microcytosis," which indicated "in range – slight," "Hypo," which indicated "in range – slight," and "H. Pylori," which indicated "out of range – 3.8 High."

Plaintiff had appointments with Stateville medical staff scheduled on February 16 and March 8, 2011 that were cancelled because Stateville was on lockdown. Plaintiff was seen on March 24, 2011, and the LPN reported that he did not have blood in his stool but had complaints of headache and pain in his upper and lower abdomen. The LPN referred Plaintiff to Dr. Ghosh for follow-up and Plaintiff was to be scheduled for an EGD (endoscopy) at UIC, where Plaintiff had already had a consultation. Plaintiff was also prescribed Zantac and Mylanta for his abdominal pain. Plaintiff was seen at UIC twice: once for an evaluation and once for an endoscopy. The endoscopy occurred on May 24, 2011 and revealed no abnormalities.

On July 15, 2011, Plaintiff reported having diarrhea four times since the previous night and Defendant Williams provided him Kaopectate. On August 12, 2011, a physician noted in Plaintiff's medical records that Plaintiff's labs were normal and that, despite Plaintiff's description of an array of symptoms, he appeared healthy with no evidence of disease.

From 2008 to present, Plaintiff admits to having had his stool tested and being given a number of medications to address his gastric complaints, including, but not limited to, stool softeners, antacid tablets, Metamucil, Zantac, and Prilosec. No test that has been performed on Plaintiff has ever shown that there was blood in his stool. At the time of his deposition, Plaintiff stated he was not taking any medications for his gastric issues.

### B.    Local Rule 56.1

Consistent with the local rules, State Defendants, Medical Defendants, and Plaintiff filed Local Rule 56.1(a)(3) statements of undisputed facts along with their summary judgment motions. [248, 253, 259.] Each substantive assertion of fact in the Local Rule 56.1(a)(3) statement must cite evidentiary material in the record and be supported by the cited material. See L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Together with their motions for summary judgment, Defendants each included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," [249, 254] as required by Local Rule 56.2. Those notices explained in detail the requirements of the Local Rules governing summary judgment. The district court may rigorously enforce compliance with Local Rule 56.1. See, *e.g.*, *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have

repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." (citing *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817 (7th Cir. 2004))).

With respect to Medical Defendants' statements of fact, Plaintiff admits ¶¶ 1, 4–6, 11, 13, 16, 24–27, 29–38, 40, 42, 44–47, 49–51, 55–68, and 71–72. [262.] As to State Defendants' statements of fact, Plaintiff admits ¶¶ 1–12, 14, 20–22, 24–27, 30, and 40. [264.] Medical Defendants responded to Plaintiff's statements of fact and admitted ¶¶ 1–6, 9, 12–14, 18, 22–30, 33–43, and 46–51. [272.] To the extent those statements contain facts that are material, they have been considered by the Court.

Plaintiff denies the remaining paragraphs of Defendants' Local Rule 56.1(a)(3) statements, but the denials violate Local Rule 56.1 in certain respects. Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); see also *Koszola v. Bd. of Educ. of the City of Chi.*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have * * * repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).[4] And some of Medical Defendants' denials of Plaintiff's statements of fact are also deficient in certain ways.

First, both Plaintiff and Medical Defendants have failed to cite to the record to support statements of fact and responses. Plaintiff fails to cite to the record to support statement of fact

---

[4] Plaintiff is an experienced litigator, especially in the § 1983 context, having filed no fewer than 12 federal lawsuits in the Northern District of Illinois while incarcerated. See *Dobbey v. Randle* (10-cv-3965); *Dobbey v. Randle*, (11-cv-0146); *Dobbey v. Zhang*, (11-cv-2374); *Dobbey v. Randle*, (11-cv-3000); *Dobbey v. Johnson*, (12-cv-1461); *Dobbey v. Mitchell-Lawshea*, (12-cv-1739); *Dobbey v. Tomhave*, (12-cv-9222); *Dobbey v. Carter*, (12-cv-9223); *Dobbey v. Weilding*, (13-cv-1068); *Dobbey v. Lemke*, (13-cv-2571); *Dobbey v. Carter*, (13-cv-5037); *Dobbey v. Kissell*, (14-cv-1050); see also *Dobbey v. Zhang*, 608 F. App'x 406, 409 (7th Cir. 2015) (acknowledging the district court's finding that "Dobbey was an 'experienced litigator' whose submissions in the proceedings had been 'coherent and articulate.'").

¶ 18, and Medical Defendants fail to cite to the record in support of their denials to Plaintiff's statements of fact ¶¶ 16, 18, and 19, and in their own statements of fact ¶¶ 7 and 8. Accordingly, Plaintiff's statement of fact ¶ 18 and Medical Defendants' statements of fact ¶¶ 7 and 8 will not be considered, and Plaintiff's statements of fact ¶¶ 16, 18, and 19 are deemed admitted.

Additionally, Plaintiff has impermissibly engaged in argument and provided legal conclusions in response to the Medical Defendants' statements of fact that he seeks to contest. For instance, Plaintiff states in response to several of Medical Defendants' statements of fact that the "Defendants have [not] accurately quoted the language of the cited portion of the record." [262, ¶¶ 14–15, 17, 18, 22, 39, 41, 43, 52, 54, 69–70.] But there is no requirement under L.R. 56.1 that statements of fact must "quote" the material in the record supporting the statement of fact. Medical Defendants do not purport to quote the cited material, they merely state facts that are supported by the record. Each party must respond and properly cite the record in his or her response to a moving party's Rule 56.1 factual statement that is supported by the record, or the Court may consider the Rule 56.1 statement to be true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); Fed. R. Civ. P. 56(e). As long as the cited material properly supports the statement of fact, there is no need for it to be accurately quoted. As such, Plaintiff is engaging in improper argument and the Court will not decline to consider these statements.

Plaintiff also improperly engages in argument in his attempts to contradict certain of the State Defendants' statements of fact. [264, ¶¶ 13, 16, 17, 23.] State Defendants likewise engage in improper argument in their statements of fact, in which they attempt to limit the parameters of Plaintiff's claim against them. [253, ¶¶ 33–39.] Legal arguments, suppositions, and conclusions of law are not "facts." See *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1

statement of facts."). Furthermore, "'[a] response to a statement of facts * * * is not the place for purely argumentative denials, and courts are not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Almy v. Kickert Sch. Bus Line, Inc*., 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) (internal citation omitted) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs*., 233 F.3d 524, 529 (7th Cir. 2000)). Accordingly, any statement of fact that is purely argument is disregarded and any statement of fact, the response to which is purely argument, is deemed admitted to the extent it is material.

Plaintiff, in support of his motion for summary judgment against Medical Defendants, has submitted many L.R. 56.1 statements that are not material. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." (emphasis added)). For example, Plaintiff states as "facts" the objections Defendant Williams made in response to Plaintiff's Second Set of Interrogatories. [253, ¶¶ 53–58.] Because the statements submitted are legal objections to discovery requests, they are not proper statements of fact; they do not bear on the question of whether Defendants were deliberately indifferent to a serious medical condition. To the extent the Court deems any statement immaterial to the question of whether Plaintiff was subjected to deliberate indifference, it will not be considered.

In some of the above listed statements of fact Plaintiff also attempts to insert additional facts into his response, which is not permitted. For instance, State Defendants claim that on April 1, 2009, Plaintiff was seen by Dr. Zhang. [253, ¶ 19.] Plaintiff admits the statement but then improperly adds information regarding the visit with testimony from his deposition. [264, ¶ 19.] Although Plaintiff often supports his extraneous assertions with record citations, see *id*., they must ignored because a non-movant seeking to assert facts that go beyond what is fairly

responsive to the movant's factual assertions must do so not in his Local Rule 56.1(b)(3)(B) response, but in a Local Rule 56.1(b)(3)(C) statement of additional facts. See *Johnson v. Cnty. of Cook*, 2012 WL 2905485, at *12 (N.D. Ill. July 16, 2012) ("It is inappropriate for a non-movant to include additional facts, meaning facts extraneous to the substance of the paragraph to which the non-movant is responding, in a Local Rule 56.1(b)(3)(B) response. Rather, Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement under Local Rule 56.1(b)(3)(C) of any additional facts that require the denial of summary judgment." (citations and internal quotation marks omitted)). The Court therefore will disregard the extraneous and immaterial facts set forth in Plaintiff's Local Rule 56.1(b)(3)(B) response to State Defendants' L.R. 56.1 statements.

Furthermore, the Court has disregarded Plaintiff's factual assertions that conflict with his sworn deposition testimony (*e.g.*, that he is not currently taking medication for gastrointestinal issues and has no problems other than an occasional "feeling"). [See 253 ¶ 28; 264, ¶ 28.] "[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) (quoting *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007)).

Finally, under Local Rule 56.1, it is improper for a party to misstate the cited record. *Nat'l Inspection Repairs v. George S. May Int'l Co.*, 2008 WL 4389834, at *2 (N.D. Ill. Sept. 24, 2008) ("The court agrees that certain of [plaintiff's] responses or additional facts improperly state legal conclusions, *assert facts not supported by the record*, or misstate the evidence * * *." (emphasis added)). Plaintiff misstates the record in his statements of fact [259, ¶¶ 8, 10–11, 17, 21], in his response to Medical Defendants' statements of fact [262, ¶¶ 9–10, 14, 17, 39, 41, 48, 52–53], and in his response to State Defendants' statement of fact [264, ¶ 29]. To the extent

Plaintiff has mischaracterized the medical records in an attempt to support his own, or to contradict Defendants' statements of fact, the Court will not consider them.

Although Plaintiff is an experienced litigator (see n.4, above), he still is proceeding *pro se*. Thus, the Court has granted him some leeway in considering his factual assertions. However, the Court has entertained Plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602.

## II.     LEGAL STANDARD

### A.     Summary Judgment Standard

Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence to permit a jury to return a verdict for the nonmoving party. *Id.* at 564. Courts neither judge the credibility of witnesses nor evaluate the weight of the evidence when addressing a summary judgment motion, see *Gonzalez v. City of Elgin*, 578 F.3d 526, 529; however, Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Deliberate Indifference Standard

The Eighth Amendment's proscription against cruel and unusual punishment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Accordingly, 'deliberate indifference to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Roe*, 631 F.3d at 857 (quoting *Estelle*, 429 U.S. at 104).

A deliberate-indifference claim consists of both an objective and a subjective element. See *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An inmate must be able to establish both (1) that he suffered an objectively serious medical condition and (2) that defendants acted with deliberate indifference to that condition. *Id.* As to the first prong, a condition is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or * * * is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe*, 631 F.3d at 857–58 (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). As to the second prong, a plaintiff must prove that the defendants acted with a "sufficiently culpable state of mind," *i.e.*, that they had actual knowledge of the plaintiff's condition but consciously disregarded it. *Roe*, 631 F.3d at 857 (quoting *Farmer*, 511 U.S. at 834); see also *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006).

## III.   ANALYSIS

### A.   Objectively Serious Medical Condition

Plaintiff's abdominal and gastrointestinal problems constitute a serious medical condition. As stated above, a serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed. See *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007); *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512–13 (7th Cir. 2005). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

The record reflects that Plaintiff suffered from ongoing "chronic" abdominal pain and was diagnosed with GERD (Gastroesophageal reflux disease). Chronic pain and GERD are objectively serious medical conditions. See, *e.g.*, *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (chronic pain); *Miller v. Campanella*, --- F.3d ---, 2015 WL 4523799, at *2 (7th Cir. July 27, 2015) ("Leaving a serious case of GERD untreated for two months is a dereliction of medical duty * * *." (citing *Jett v. Penner*, 439 F3d. 1091, 1097–98 (9th Cir. 2006))). Plaintiff has established an objectively serious medical condition.

### B.   Subjective Deliberate Indifference

#### 1.   Medical Defendants

With regard to the subjective element of element of deliberate indifference, Plaintiff must demonstrate that each Defendant was aware of, and consciously disregarded, his medical needs. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103–04; *Hayes v. Snyder*, 546 U.S. 516, 522 (7th Cir. 2008). The fact that a prisoner has received medical treatment does not necessarily defeat his

claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno*, 414 F.3d at 654, or by "woefully inadequate action," as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Allen v. Wexford Health Sources, Inc.*, 2011 WL 2463544, at *1 (N.D. Ill. Jun. 17, 2011). The subjective element of deliberate indifference encompasses such conduct as the refusal to treat a prisoner's chronic pain, *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Roe*, 631 F.3d at 857 (*citing Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)).

Nothing in the record establishes a refusal to treat Plaintiff or a substantial departure by Defendants from acceptable medical judgment. On the contrary, the record establishes that Defendants provided ongoing and comprehensive care for Plaintiff's abdominal issues and multiple other medical conditions.

Plaintiff suggests that the right doctor or the right test could have unearthed a cause and cure for his abdominal problems. But questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment." *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 97). In addition, an inability to effect a final cure does not necessarily support a finding of deliberate indifference. See *Lieberman v. Budz*, 2010 WL 3522998, *1 (N.D. Ill. Sep. 2, 2010) (citing *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996)). "[T]he Eighth Amendment does not require that prisoners receive unqualified access to health care. Rather, they are entitled to only adequate medical care." *Johnson*, 433 F.3d 1001, 1013 (7th Cir. 2006) (internal citation omitted); see also *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [a

plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").

Plaintiff also contends that he should have been seen by a specialist earlier than he was. But Plaintiff is not constitutionally entitled to the treatment of his choice, *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008), nor does he have a constitutional right to see a specialist—at least not until "the need for specialized expertise either was known by the treating physicians or would have been obvious to a lay person." *Phyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014); see also *Kendrick v. Frank*, 310 F. App'x 34, 38 (7th Cir. 2009); *Randle v. Mesrobian*, 165 F.3d 32, at *3 (7th Cir. 1998) (unpublished) (collecting cases); *Johnson v. Raba*, 1997 WL 610403, *3 (N.D. Ill. Sep. 24, 1997) ("[A] prisoner has no categorical right to be treated by a specialist.").

Here, the record indicates that Plaintiff was receiving adequate care at the prison but nonetheless was sent to a specialist at UIC (multiple times) for additional testing and treatment, including in instances where Plaintiff's complaints were intermittent pain in his upper abdomen with no vomiting and no blood in his stool. There is no evidence that Plaintiff required the care of a specialist at an earlier time because Plaintiff's examinations largely indicated negative results and, even when there were results that indicated a potential issue, Plaintiff continued to receive ongoing care. In short, Plaintiff has not shown that his doctors' treatment decisions in this case "demonstrated an absence of professional judgment[—]that is, that 'no minimally competent professional would have so responded under those circumstances.'" *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Roe*, 631 F.3d at 857); see also *Ortiz v. Webster*, 655 F.3d 731, 737 (7th Cir. 2011) ("[A] reasonable response to a medical risk * * * can never constitute deliberate indifference.").

Plaintiff also expresses dissatisfaction with the overall quality of the medical care provided to him. But this allegation is belied by the comprehensive and ongoing nature of the care that Plaintiff received. "'There is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field.'" *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Jackson*, 541 F.3d 688 at 697). A prison physician is generally free to determine the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards. *Id.* (citations omitted). Based on the comprehensive and ongoing care that Plaintiff received (including multiple visits within a single month, in several instances), no reasonable person could find that either Defendant Zhang or Defendant Williams withheld medically necessary care.

Moreover, neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F3d. 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106). Instead, the Court examines the totality of the medical care provided, such that isolated incidents of delay do not rise to the level of deliberate indifference. See *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez*, 111 F.3d at 1374–75; *Smith v. Dart*, 2013 WL 315742, at *8 (N.D. Ill. Jan. 28, 2013) (collecting cases). Here, the record establishes that, at most, Plaintiff can establish negligence. Arguably Plaintiff should have received the H. Pylori test prescribed after his March 21, 2009 medical visit, and arguably he should have been taken to UIC for his follow-up visit six weeks after his May 24, 2011 endoscopy. However, the record indicates an ongoing course of care by Medical Defendants and other medical personnel at Stateville during the relevant time period (including medical examinations, diagnostic tests, prescribed medications, and referrals to outside hospitals

and specialists), and the endoscopy revealed no abnormalities, making the missed return visit inconsequential. The totality of medical care that Plaintiff received negates the impact of the isolated (and potentially negligent) incidents raised by Plaintiff.

Plaintiff points to no evidence that Medical Defendants were deliberately indifferent. At this stage of the case, having completed the discovery process, Plaintiff must "marshal and present the court with the evidence []he contends will prove h[is] case." *Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012) (summary judgment is often referred to as the "put up or shut up" stage of the case), citing *Payne v. Pauley*, 337 F.3d 767, 772–73 (7th Cir. 2003). Plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; see also *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). Because Plaintiff has failed to establish deliberate indifference against Medical Defendants Zhang and Williams, his motion for summary judgment against them is denied. And because no reasonable jury could return a verdict in favor of Plaintiff on this issue, Medical Defendants' motion for summary judgment is granted.

### 2. State Defendants

Claims of deliberate indifference to a prisoner's medical needs are examined differently depending on whether the defendant is a medical professional or a lay person. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2103). Lay persons who are not responsible for administering medical care are entitled to rely on and defer to the judgment of medical professionals. *Id.* at 483; *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). However, a lay person may be found to have been deliberately indifferent to an inmate's medical needs if he has actual knowledge or has reason to believe that medical personnel are not treating or mistreating a prisoner. *King*, 680

F.3d at 1018. As discussed in the prior section, there is no evidence in the record that Plaintiff was being subjected to deliberate indifference by Medical Defendants or by any medical personnel at Stateville.

Plaintiff's claims against all State Defendants involve allegations that he submitted grievances that were denied or made complaints that were ignored, and that the State Defendants failed to adequately investigate his claims of deliberate indifference. Generally, the denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). A prison official *can* be liable under 42 U.S.C. § 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his or her attention through the grievance process. See *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); see also *Ames v. Randle*, 933 F. Supp. 2d 1028, 1037 n.2 (N.D. Ill. 2013) (liability attaches where a non-medical defendant is in a "position to ameliorate [Plaintiff's] condition" and fails to do so). This is a consequence of the official's duty under federal law to prevent and remedy constitutional violations, not a duty to respond to grievances. But non-medical personnel not directly involved in an inmate's medical care are usually not liable for their review and/or denial of medical grievances. See, *e.g.*, *Neely v. Randle*, 2013 WL 3321451, at *3 (N.D. Ill. June 13, 2013) ("If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." (quoting *Gevas v. Mitchell*, 492 F. App'x. 654, 660 (7th Cir. 2012))).

Here, because there is no evidence of deliberate indifference in the record against the Medical Defendants, there was no obligation for any State Defendant (none of whom is a medical professional) to assist beyond the care already being provided to Plaintiff. The undisputed evidence shows that Plaintiff received constitutionally adequate medical care and that he merely disagreed or was dissatisfied with the treatment provided. No reasonable jury could find that State Defendants were deliberately indifferent to Plaintiff's medical needs. See *McGee*, 721 F.3d at 483–84 (no deliberate indifference by security personnel who relied on medical professionals' decision not to order plaintiff to be exempt from leg irons); *King*, 680 F.3d at 1018 (correctional officers were not deliberately indifferent to detainee's medical needs because there was no evidence that detainee was not being properly treated by doctor).

Plaintiff highlights the fact that some of his medical visits were cancelled due to Stateville being on lockdown or due to insufficient staffing. But Plaintiff does not allege that any of these delays caused him additional pain. Absent such an allegation, there is nothing to support a deliberate indifference claim. See *Johnson v. Sango*, 1996 WL 67704, at *2 (7th Cir. 1996) ("Although [plaintiff] did allege some delay in the taking of his x-rays, [plaintiff's] alleged back and shoulder pain was not of the severity to require immediate medical attention and thus it was reasonable for [the doctor] to delay treatment until she had seen the x-rays."); *Davis v. Samalio*, 286 F. App'x 325, 328 (7th Cir. 2008) ("[Plaintiff] presented no competent medical evidence supporting the theory that the eight-day delay in procuring a second round of x-rays had a detrimental effect on his fractured wrist."); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). Even though Plaintiff's March 25, 2009 visit was

rescheduled to April 1, 2009 because his medical file could not be located, and his October 9, 2009 visit was cancelled due to insufficient staffing, Plaintiff continued to receive ongoing care during these periods. There is no evidence in the record, medical or otherwise, establishing any detrimental effect from these delays.

For the foregoing reasons, State Defendants' motion for summary judgment is granted. Even viewing the summary judgment record in the light most favorable to Plaintiff, the Court concludes that no reasonable person could find that any of the State Defendants acted with deliberate indifference to Plaintiff's serious medical need.

### C.     Plaintiff's Motion to Strike

Plaintiff filed a motion to strike [267] State Defendants' motion for summary judgment and supporting L.R. 56.1 statement of facts, alleging that State Defendants' motion and supporting materials—filed on December 22, 2014—were untimely. But per the Court's November 24, 2014 order [241] revising the parties' briefing schedule, Defendants' motion was due on December 22, 2014. Thus, State Defendants' filing was timely. Additionally, Plaintiff seeks to strike State Defendants' motion and supporting materials because State Defendants filed a waiver instead of an answer to Plaintiff's third amended complaint pursuant to 42 U.S.C. § 1997e(g)(1). However, in the Court's November 24, 2014 order [241], the Court granted State Defendants' motion to waive their right to reply [237] in accordance with 42 U.S.C. § 1997e(g)(1)–(2). Accordingly, Plaintiff's motion [267] is denied.

### D.     Appeal

If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R.

App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dept. of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is advised that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or for failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

## IV.    CONCLUSION

For the reasons stated above, Medical Defendants' motion for summary judgment [246] and State Defendants' motion for summary judgment [251] are granted, and Plaintiff's motion for summary judgment [258] is denied. Plaintiff's motion to strike State Defendants' motion for summary judgment and L.R. 56.1 statement of facts [267] is denied.

Date: August 26, 2015

_____
Robert M. Dow, Jr.
United States District Judge